David Roland HYSLOP, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16032.

United States Court of Appeals Eighth Circuit.

Dec. 31, 1958.

Rehearing Denied Jan. 30, 1959.

Joseph T. Votava, Omaha, Neb., for appellant.

Robert H. Berkshire, Asst. U. S. Atty., Omaha, Neb. (William C. Spire, U. S. Atty., Omaha, Neb., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTER-HOUT, Circuit Judges.

GARDNER, Chief Judge.

This case involves an action to recover forfeitures and damages under the so-called False Claims Act. 31 U.S.C.A. § 231. The appellant will be referred to as defendant.

Defendant was indicted under Section 1001, Title 18 U.S.C.A. So far as here pertinent the civil action is based upon Section 231, Title 31, U.S.C.A. which provides as follows:

"Any person not in the military or naval forces of the United States, or in the militia called into or actually employed in the service of the United States, who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, or who enters into any agreement, combination, or conspiracy to defraud the Government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim, or who, having charge, possession, custody, or control of any money or other public property used or to be used in the military or naval service, who, with intent to defraud the United States or willfully to conceal such money or other property, delivers or causes to be delivered, to any other person having authority to receive the same, any amount of such money or other property less than that for which he received a certificate or took a receipt, and every person authorized to make or deliver any certificate, voucher, receipt, or other paper certifying the receipt of arms, ammunition, provisions, clothing, or other property so used or to be used, who makes or delivers the same to any other person without a full knowledge of the truth of the facts stated therein, and with intent to defraud the United States, * * * shall forfeit and pay to the United States the sum of $2,000, and, in ad-

dition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit."

The indictment contained two counts. The first count charged:

"That David Roland Hyslop, on or about the 2nd day of September, 1953, at Vermillion, in the District of South Dakota, did knowingly and willfully, in a matter within the jurisdiction of a department or agency of the United States of America, to-wit, the Department of the Army, conceal, and cover up by a trick or scheme a material fact and did make a false representation, knowing the same to be false, in that said David Roland Hyslop did knowingly and willfully falsify the quality and grade of a shipment of eggs furnished and offered for sale to the United States Army by causing certain 'sample' crates of eggs contained in such shipment and designated for inspection by United States Army officials to be secretly removed and certain other false and fraudulently marked cases of eggs of a higher grade and quality substituted therefor, and did conceal the material fact that the grade and quality of eggs offered for sale did not correspond to the grade and quality of the eggs contained in the substituted sample cases offered to the inspectors for inspection, all in violation of Section 1001, Title 18, United States Code Annotated."

The second count was substantially identical with the first except as to dates. To this indictment defendant entered a plea of guilty and was thereupon adjudged guilty and sentenced to pay fines upon each of the counts. Thereafter the present civil action was commenced to recover penalty and damages as provided in the False Claims Act. The complaint was in two counts and so far as here material reads as follows:

"1. This is a civil action brought by the United States of America as plaintiff under the provisions of Sections 3490, 3492, and 5438 of the Revised Statutes (31 U.S.C.[A. §§] 231, 233) of which this Court has jurisdiction by reason of the provisions of Section 3491 of the Revised Statutes (31 U.S.C.[A. §] 232), as amended.

"2. Defendant David Roland Hyslop, at all times mentioned hereafter, was in the produce business with one Merlin Anderson operating the Anderson Produce Company, Vermillion, South Dakota, and the General Produce Company, Scotland, South Dakota, and now resides at 8331 California Street, Omaha, Nebraska, which address is within the jurisdiction of this Court.

"3. The defendant is not now, nor at any time mentioned hereinafter was, in the military or naval forces of the United States, or in the militia called into or actually employed in the service of the United States.

"4. During the period from on or about May of 1953, through on or about September of 1953, Sol Rich & Co., Inc., 1131 Fulton Market, Chicago, Illinois, and Wilson and Co. Inc., of Chicago, Illinois, were awarded contracts by the Department of the Army to supply eggs, domestic, packed, fresh, natural and processed, grade QMC II at varying unit prices which are identified as PO.FH 31880, PO.FH 34281, PO.-FH 34293, PO.FH 34649, PO.FH 6844, PO.FH 6833, PO.FH 7135, PO.FH 7377, and Col. SC 1640, Col. SC 1641, Col. SC 1642 and Col. SC 1643 respectively.

"5. The Anderson Produce Company and the General Produce Company, through the efforts of the defendant, became the supplier of the eggs for the fulfillment of the prime contracts.

"6. At various times during the performance of the prime contracts

the defendant did make, or cause to be made, present or cause to be presented, for payment on approval by the United States claims upon the Government of the United States knowing such claims to be false, fictitious or fraudulent.

"7. At various times during the performance of the prime contracts the defendant did for the purpose of obtaining, or aiding to obtain, the payment or approval of such claims by the United States make, use, or caused to be made or used false bills, receipts, vouchers, rolls, accounts, claims or certificates knowing the same to contain false, fraudulent or fictitious statements or entries.

"8. At various times during the performance of the prime contracts the defendant did knowingly and unlawfully agree, combine and conspire with Merlin Anderson, and others, to defraud the United States, or a department or officer thereof by obtaining or aiding to obtain the payment or approval of false, fictitious or fraudulent claims.

"9. Among the tricks, schemes and devices employed by defendant, without the knowledge of the plaintiff, in furtherance of the matters set forth in paragraph 6, 7, and 8 were:

(a) A government inspector's stamp which was used by government inspectors to identify cases of eggs selected for inspection was unlawfully used or caused to be used by the defendant to stamp cases containing eggs of superior quality and not representative of the lot presented.

(b) The defendant switched or caused to be switched cases of eggs marked for inspection or switched or caused to be switched the eggs in cases marked for inspection so as to permit only eggs meeting contract specifications to be inspected.

(c) The defendant included or caused to be included storage eggs in shipments contrary to the specifications of the contracts.

"10. The United States paid such false and fraudulent claims through reimbursement of the prime contractors.

"11. By reason of the promises and pursuant to the provisions of Sections 3490 and 5438 of the Revised Statutes, defendant became and is liable to pay to the United States the sum of $2,000 for each and every false, fictitious or fraudulent claim, false bill, invoice, certificate or transaction done or committed by defendant which constitute violations of the said Statutes; and in addition double the amount of damages which the United States has sustained by reason of the doing or committing of such acts, together with interest and costs of this suit.

"*Wherefore*, the United States, as plaintiff, demands judgment against the defendant for double damages and forfeitures as allowable by Statute, together with interest and costs of this suit.

"Count Two.

"1. Plaintiff incorporates by reference as if fully set out as part of this count the allegations contained in paragraphs 1, 2, 3, 5, 7, 8, and 9 of Count One of this complaint.

"2. Effective August 8, 1953, and August 31, 1953, Sol Rich & Co. Inc., 1131 Fulton Market, Chicago, Illinois was awarded contracts by the Department of the Army, identified as PO.FH 8696 and PO.FH 9164 respectively to supply eggs, domestic, packed, fresh, natural and processed grade QMC II at the respective unit price of .6297 and .6249 cents per dozen.

"3. On or about August 28, 1953, and on or about September 2, 1953, the defendant pursuant to an unlawful agreement, combination or conspiracy with Merlin Anderson, and others, to defraud the United States or a department or officer thereof

caused the inspection of sample lots under each of the prime contracts other than those selected by the Government inspector for the said inspection by substitution of eggs of higher quality than those contained in the selected lots.

"4. By reason of the premises and pursuant to the provisions of Sections 3490 and 5438 of the Revised Statutes, defendant became and is liable to pay the United States the sum of $2,000 for each transaction done or committed by defendant which constitute violations of the said Statutes; and in addition double the amount of damages which the United States has sustained by reason of the doing or committing of such acts, together with interest and costs of this suit.

"*Wherefore*, the United States, as plaintiff, demands judgment against the defendant for double damages and forfeitures as allowable by Statute, together with interest and costs of this suit."

To this complaint defendant answered admitting the allegations contained in the first and third paragraphs of each count but specifically denied that he was in business with Anderson as alleged in paragraph two of each count of the complaint and categorically denied all other allegations contained in each count of the complaint.

In this state of the pleadings the government moved for summary judgment on Count Two of the complaint for $2,000 penalty for each transaction alleged in said count as provided in Section 231, Title 31 U.S.C.A., waiving all right to recover actual damages. In support of its motion the government offered, and there was received into evidence over the objection of defendant, authenticated copies of the indictment, arraignment, plea of guilty and judgment of conviction in the criminal case. There was no other evidence produced in support of the allegations of the complaint. The court thereupon entered judgment for the government on the second cause of action in accordance with its motion for summary judgment.

Defendant seeks reversal, in effect, on the following grounds: (1) The evidence was insufficient to entitle the government to summary judgment and the court erred in admitting in evidence and considering and basing its judgment herein on the criminal case record without supplementary proof of identity of issues and facts and, (2) the court erred in entering judgment on the motion for the reason that there was no evidence whatsoever that the defendant presented, made, or filed, or caused to be presented, made or filed, or aided in presenting, making or the filing of any claim against the government or any agency, or that the government, directly or indirectly, was requested to, or paid, or approved any claim, or became in any manner, directly or indirectly, presently or contingently obligated to approve or pay any claim.

■■ The government relies wholly upon the plea of guilty in the criminal case as proof of the cause of action in the instant case on the theory that the defendant is collaterally estopped from relitigating the same issues or facts that were admitted by him in the criminal case. Counsel for defendant admits that in an appropriate case the rule of collateral estoppel may be invoked but insists that the admissions made by the plea of guilty in the criminal case are not identical with the issues and facts alleged in the instant civil case. So far as the abstract principle of law is concerned there is no controversy between the parties but the difficulty arises in applying the law to the facts as disclosed by the record in this case. In order to render the principle of collateral estoppel applicable the burden is upon the party relying upon the doctrine to prove that such questions were distinctly put in issue and directly determined by trial or plea of guilty in the criminal prosecution. Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969; Emich Motors v. General Motors, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534; 30A Am.Jur.,

Judgments, Sec. 466. In the instant action it is alleged that "effective August 8, 1953, and August 31, 1953, Sol Rich & Co. Inc., 1131 Fulton Market, Chicago, Illinois, was awarded contracts by the Department of the Army, identified as PO.FH 8696 and PO.FH 9164 respectively to supply eggs, domestic, packed, fresh, natural and processed grade QMC II at the respective unit price of .6297 and .6249 cents per dozen" and that "on or about August 28, 1953, and on or about September 2, 1953, the defendant pursuant to an unlawful agreement, combination or conspiracy with Merlin Anderson, and others, to defraud the United States or a department or officer thereof caused the inspection of sample lots under each of the prime contracts other than those selected by the Government inspector for the said inspection by substitution of eggs of higher quality than those contained in the selected lots." This was directly denied by answer in the civil case and hence put in issue. In the criminal case it was charged that the defendant did " * * * conceal and cover up by a trick or scheme a material fact and did make a false representation, knowing the same to be false * * *." His plea of guilty was limited to the charge contained in the indictment. He did not by this plea of guilty admit that he had any transactions whatever with Sol Rich & Co. nor did he admit he was in the produce business with one Merlin Anderson. By his answer in the civil case he specifically denied that he was in business with Anderson. There is no proof that the acts charged in the indictment as having been committed by him are identical with the acts charged in the second count of the civil case. In fact, so far as the proof shows, the transactions to which he pleaded guilty were entirely distinct from those alleged in the civil action. If his plea of guilty to the acts charged in the indictment can be accepted as proof of the allegations of furnishing eggs to Sol Rich & Co. then it could be accepted as proof that eggs were furnished to Wilson and Co., and likewise, that those transactions alleged in the indictment involved furnishing eggs by Anderson directly to the United States. On the same theory judgment might be secured against him for innumerable transactions similar to those alleged in the civil action on proof of his plea of guilty in the criminal action. It must be borne in mind that in the civil action the defendant has specifically denied that he had any transactions with Sol Rich & Co. and this we think raised a genuine issue of a material fact, and proof of his plea of guilty to the indictment in the criminal case was wholly insufficient to prove the allegations contained in the second count of the civil case. The complaint seeks recovery for specific transactions, which transactions defendant in his answer denies and these specific transactions are not charged in the indictment and hence the proof of a plea of guilty standing alone is no proof whatever of the specific transactions alleged in the complaint in the civil action. We conclude that there was a failure of proof of the transactions alleged as a cause of action in Count Two of the complaint.

It is next contended by defendant that there was no proof that he presented, made or filed, or caused to be presented, made or filed, or aided in presenting, making or filing any claim against the government. The False Claims Act so far as here applicable provides that:

"Any person * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit or deposition, knowing the same to contain

any fraudulent or fictitious statement or entry, or who enters into any agreement, combination, or conspiracy to defraud the Government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit * * *."

■■ Having in mind that there was no proof that defendant had any transactions with the prime contractors, it cannot logically be contended that he is responsible for any acts of the prime contractors in presenting claims to the government. In fact there is no evidence that any claim growing out of the charges contained in the indictment or the complaint in the civil action was ever presented to the government. There is no evidence even tending to prove that the government accepted the eggs or in any manner became liable to pay any claim based thereon, nor is there any claim in the motion for summary judgment that the government suffered any damage by reason of the transaction. This provision of the statute is penal and must be strictly construed. United States ex rel. Brensilber v. Bausch & Lomb Optical Co., 2 Cir., 131 F.2d 545; United States v. McNinch, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001. In United States v. McNinch, supra, in the course of the opinion it is said:

"But it must be kept in mind, as we explained in Rainwater (Rainwater v. United States, 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996), that in determining the meaning of the words 'claim against the Government' we are actually construing the provisions of a criminal statute. Such provisions must be carefully restricted, not only to their literal terms but to the evident purpose of Congress in using those terms * * *."

■■ The proceeding on motion for summary judgment is in the nature of an inquiry to determine whether or not there is a genuine issue of fact. Caylor v. Virden, 8 Cir., 217 F.2d 739. Viewing the evidence in a light most favorable to the defendant we are convinced that the case presented a genuine issue of fact which could not properly be determined on motion for summary judgment.

The judgment appealed from is therefore reversed and the cause remanded with directions to grant defendant a new trial.