**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 28 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee and Cross-Appellant,

v.

MANUEL GALLARDO-MENDEZ, a/k/a Luis
Lizarraga, a/k/a Oscar Berdeja,

      Defendant-Appellant and Cross-Appellee.

Nos. 97-4062 & 97-4072

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 96-CR-176)**

---

Mark K. Vincent (Scott M. Matheson, Jr., United States Attorney, with him on the
briefs), Assistant United States Attorney, Salt Lake City, Utah, for Plaintiff-
Appellee and Cross-Appellant.

Robert Breeze, Salt Lake City, Utah, for Defendant-Appellant and Cross-
Appellee.

---

Before **BRORBY, McKAY** and **BRISCOE**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

Manuel Gallardo-Mendez [1] appeals his conviction for violating 8 U.S.C. § 1326, reentry into the United States by a deported alien. Mr. Gallardo-Mendez alleges the district court violated his Sixth Amendment rights by invoking the doctrine of collateral estoppel against him on the issue of alienage. He also challenges the sufficiency of the evidence to support a conviction. The government challenges the sentencing court's decision to grant Mr. Gallardo-Mendez a two-level downward adjustment under United States Sentencing Guidelines § 3E1.1 for acceptance of responsibility. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the judgment of conviction and remand for further proceedings.

I

Prior to his indictment in this case, he had been deported on three occasions. Mr. Gallardo-Mendez was first deported in December 1987, following his completion of a state sentence for theft by receiving. In September 1988, Mr. Gallardo-Mendez was deported for the second time.

---

[1] The Appellant and Cross-Appellee appears to have used a variety of names and aliases. We will refer to him throughout this opinion as Mr. Gallardo-Mendez.

In April 1991, Mr. Gallardo-Mendez was arrested for illegally reentering the United States. Subsequently, he was indicted for violating 8 U.S.C. § 1326, reentry by a deported alien, and three counts of falsely claiming to be a United States citizen in violation of 18 U.S.C. § 911. Mr. Gallardo-Mendez pled guilty to the illegal reentry charge. Following completion of his federal sentence in February 1992, Mr. Gallardo-Mendez was deported for the third time.

In September 1995, Mr. Gallardo-Mendez was convicted on state charges and sentenced to a term in the Utah state prison. An Immigration and Naturalization Service detainer was filed, and in August 1996, Mr. Gallardo-Mendez was indicted on the federal charge of illegal reentry of a deported alien in violation of 8 U.S.C. § 1326, the case from which these cross-appeals arise. Mr. Gallardo-Mendez filed a motion for a pretrial determination that he was entitled to contest the issue of alienage at trial. The government countered with a motion in limine requesting that Mr. Gallardo-Mendez be collaterally estopped from contesting his alienage prior to his 1991 federal conviction for illegal reentry of a deported alien. The government contended Mr. Gallardo-Mendez' guilty plea in 1991 provided an adequate basis for application of the collateral estoppel doctrine on the issue of alienage.

After a hearing, the district court invoked the doctrine of collateral estoppel against Mr. Gallardo-Mendez, and estopped him from contesting his alienage prior to his 1991 conviction for illegal reentry of a deported alien. The district court also prohibited Mr. Gallardo-Mendez from collaterally attacking his 1991 criminal conviction at his upcoming trial.

At Mr. Gallardo-Mendez' jury trial, alienage was an essential element of the crime charged, unlawful reentry of a deported alien. [2] *See* 8 U.S.C. § 1326.

---

[2] The jury was given the following instruction on the elements of the crime:

> In order to sustain its burden of proof for the crime of unlawful reentry of a deported alien, as charged in the Indictment, the government must prove the following four elements beyond a reasonable doubt:
>
> FIRST, that at the time alleged in the Indictment, the defendant was an alien, that is, that the defendant was not a national or a citizen of the United States;
>
> SECOND, that the defendant was arrested and deported from the United States on or about February 7, 1992;
>
> THIRD, that, thereafter, the defendant willfully, knowingly, and voluntarily was present in the United States and, on or about May 19, 1995, he was found in Utah County, Utah;
>
> FOURTH, that the defendant failed to obtain the express permission of the Attorney General to reapply for admission into the United States before he was found in the United States.

Consistent with its collateral estoppel order, the district court instructed the jury on the issue of alienage as follows:

> There has been a judicial determination in litigation, to which the defendant was a party, that on and prior to July 26, 1991, defendant was an alien and not a citizen of the United States. The defendant is bound by that determination.

The jury convicted Mr. Gallardo-Mendez. The district court sentenced Mr. Gallardo-Mendez to a term of ninety-six months imprisonment. These cross-appeals followed.

## II

We review the district court's application of the collateral estoppel doctrine, a question of law, *de novo*. *United States v. Rogers*, 960 F.2d 1501, 1507 (10th Cir.), *cert. denied*, 506 U.S. 1035 (1992). The federal doctrine of collateral estoppel stands for the principle that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). While first developed and more commonly applied in the civil arena, the doctrine of collateral estoppel has been an "established rule of federal criminal law" at least since *United States v. Oppenheimer*, 242 U.S. 85 (1916). *Ashe*, 397 U.S. at 443-44 (discussing history of collateral estoppel doctrine in criminal arena). In *Ashe*, the Court held that a criminal defendant's well founded

assertion of collateral estoppel based on a previous judgment of acquittal "is embodied in the Fifth Amendment guarantee against double jeopardy." *Id*. at 445. The United States Supreme Court, however, has not addressed directly the question of whether collateral estoppel can be applied *against* the defendant in a criminal case. *But see id* . at 464-65 (Burger, C.J., dissenting) (positing "courts that have applied the collateral-estoppel concept to criminal actions would certainly not apply it to both parties, as is true in civil cases"); *Simpson v. Florida* , 403 U.S. 384, 386 (1971) (noting that "'mutuality' was not an ingredient of the collateral estoppel rule imposed by the Fifth and Fourteenth Amendments upon the States") (quoting *Ashe*, 397 U.S. at 443). Nor has this court. [3]

---

[3] There is a clear split among our sister circuits that have ruled on the question of whether the government may use the doctrine of collateral estoppel to preclude a criminal defendant from raising an issue adjudicated in a prior criminal proceeding. *Compare United States v. Pelullo*, 14 F.3d 881, 896 (3rd Cir. 1994) (rejecting application of collateral estoppel against a defendant in successive criminal proceedings), *and United States v. Harnage*, 976 F.2d 633, 636 (11th Cir. 1992) (same) *with Pena-Cabanillas v. United States*, 394 F.2d 785, 787-88 (9th Cir. 1968) (approving application of collateral estoppel against a defendant in successive criminal proceedings), *and Hernandez-Uribe v. United States*, 515 F.2d 20, 22 (8th Cir. 1975) (same), *cert. denied*, 423 U.S. 1057 (1976). *See generally United States v. Day*, 591 F.2d 861, 892 n.23 (D.C. Cir. 1978) (Robinson, J., dissenting in part) (alluding to collateral estoppel issue not actually presented to the court for decision); *United States v. Ping*, 555 F.2d 1069, 1076 (2d Cir. 1977) (discussing but not reaching "difficult issue" of whether collateral estoppel can be invoked by government in criminal case).

Mr. Gallardo-Mendez urges this court to adopt the position assumed by the Third Circuit in *United States v. Pelullo*, 14 F.3d 881, 889-97 (3d Cir. 1994), and reject generally the use of collateral estoppel against a criminal defendant as intrusive on the Sixth Amendment right to a jury trial.[4] However, the facts of this case require us to answer only the narrower question of whether the government may use a judgment in a criminal case following a plea of guilty to collaterally estop a defendant from relitigating an issue in a subsequent criminal proceeding.

In a case factually parallel to the case at bar, the Eighth Circuit held that a defendant could be collaterally estopped from contesting alienage based on a prior

---

[4] The Third Circuit provided a thorough and closely reasoned analysis of the use of collateral estoppel against a criminal defendant in *Pelullo*, a case where the government sought to use the defendant's prior conviction by jury for wire fraud as collateral estoppel to establish a predicate offense in a trial before a second jury for violation of the Racketeer Influenced and Corrupt Organization (RICO) Act. *Pelullo*, 14 F.3d at 889. The *Pelullo* court first rejected explicitly the "public policy and judicial efficiency" rationale for collateral estoppel advanced by the Ninth Circuit in *Pena-Cabanillas*, 394 F.2d at 786-88, concluding that "the liberty interest of a criminal defendant takes priority over the usual concerns for efficient judicial administration so often found in civil proceedings." *Pelullo*, 14 F.3d at 892-94. The *Pelullo* court then engaged in a detailed analysis of the Sixth and Seventh Amendments to the United States Constitution, concluding that "the right to a jury trial in every criminal prosecution is absolute." *Id.* at 894-96. Ultimately, the court held "the constitutional mandate of the Sixth Amendment for a jury trial in every criminal prosecution ... necessitates that every jury empaneled for a prosecution considers evidence of guilt afresh and without the judicial direction attending collateral estoppel." *Id*. at 896 (citing *State v. Ingenito*, 432 A.2d 912, 915-19 (N.J. 1981)).

plea of guilty to the charge of illegal reentry by an alien in a successive criminal proceeding on the same charge. *Hernandez-Uribe v. United States*, 515 F.2d 20, 21-22 (8th Cir. 1975), *cert. denied*, 423 U.S. 1057 (1976); *see also United States v. Bejar-Matrecios*, 618 F.2d 81, 83-84 (9th Cir. 1980) (reversing conviction on other grounds, but citing *Hernandez-Uribe* with approval). The Court of Appeals for the Eighth Circuit rested its holding in *Hernandez-Uribe* on three discernible bases.

First, the Eighth Circuit embraced the reasoning of the Ninth Circuit in *Pena-Cabanillas v. United States*, 394 F.2d 785 (9th Cir. 1968), where collateral estoppel was invoked against a criminal defendant on the issue of alienage based on an earlier conviction. *Hernandez-Uribe*, 515 F.2d at 22 ("We find such reasoning [ *Pena-Cabanillas* ] to be persuasive.") The Ninth Circuit had itself adopted the reasoning of *United States v. Rangel-Perez*, 179 F. Supp. 619 (S.D. Cal. 1959), yet another case focusing on the issue of alienage. *Pena-Cabanillas*, 394 F.2d at 787-88. The Ninth Circuit joined in the district court's conclusion that "wise public policy and common sense judicial administration combine to advocate the application of the [collateral estoppel] doctrine against a defendant in criminal cases as to those issues which have in fact been litigated and adjudicated in a prior criminal case between the same prosecutor and the same

defendant." [5] *Id*. at 787 (citing *Rangel-Perez*, 179 F. Supp. at 625); *accord Hernandez-Uribe*, 515 F.2d at 21-22.

We are not convinced according preclusive effect to guilty pleas would, in fact, serve the interests of "wise public policy and common sense judicial administration." The prospect of being collaterally estopped at some future date may discourage criminal defendants from settling criminal charges by pleading guilty. *See* Note, Precluding the Accused: Offensive Collateral Estoppel in Criminal Cases, 80 Va. L. Rev. 1379, 1421-22 (1994) (arguing "plea bargain pricing" would be made less certain, hence, less attractive, to defendants if pleas are accorded preclusive effect). The judicial burdens of ensuring guilty pleas are entered "knowingly," given the prospect of potential complex collateral estoppel applications, arguably would be enhanced. *See* Fed. R. Crim. P. 11; *see also McCarthy v. United States*, 394 U.S. 459 (1969) (explicating Fed. R. Crim. P. 11 requirements). Additionally, the process of determining whether or not collateral

---

[5] The "wise public policy and common sense judicial administration" relied on by the Ninth Circuit was the need to deter and control the problem of alien illegal entry into the United States. The court reasoned that the prospect of a trial *de novo* on the issue of alienage would encourage defendants to repeatedly attempt reentry in the hope of attaining a favorable jury verdict. *Pena-Cabanillas*, 394 F.2d at 787-88 (adopting the reasoning of *Rangel-Perez*, 179 F. Supp. at 626); *accord Hernandez-Uribe*, 515 F.2d at 21-22.

estoppel is appropriate in a subsequent criminal proceeding can itself be cumbersome. *See United States v. Harnage*, 976 F.2d 633, 634-36 (11th Cir. 1992) (rejecting the use of collateral estoppel against criminal defendants on the grounds of judicial economy); *see, e.g., United States v. Colacurcio*, 514 F.2d 1, 6-7 (9th Cir. 1975) (rejecting application of collateral estoppel against a criminal defendant where precise monetary amounts were not "distinctly put in issue and directly determined" in prior proceeding (citation omitted)).

Moreover, while "wise public policy and judicial efficiency" may be sufficient reasons to apply collateral estoppel in civil cases, they do not have the same weight and value in criminal cases. *See Ashe*, 397 U.S. at 464 (Burger, C.J., dissenting) (recognizing that "in criminal cases, finality and conservation of private, public and judicial resources are lesser values than in civil litigation"). In a criminal prosecution, the defendant has at stake an "'interest of transcending value,'" his liberty. *In re Winship*, 397 U.S. 358, 364 (1970) (quoting *Speiser v. Randall*, 357 U.S. 513, 525-26 (1958)). As the Court of Appeals for the Third Circuit has well illustrated, this interest of the accused to vindicate himself in a criminal case has been held to trump a variety of "public interest concerns ... of the highest magnitude." *Pelullo*, 14 F.3d at 893 (citing *United States v. Nixon*, 418 U.S. 683, 703-16 (3d Cir. 1974) (executive privilege); *Davis v. Alaska*, 415

U.S. 308, 318-321 (1974) (anonymity of juvenile offenders); *United States v. Lindstrom*, 698 F.2d 1154, 1166-67 (11th Cir. 1983) (confidentiality of medical records)). We note also that the Supreme Court did not make the doctrine of collateral estoppel available to criminal defendants as a matter of judicial efficiency; the Court found a constitutional mandate for use of the doctrine by the defendant in the Fifth Amendment guarantee against double jeopardy. *Ashe*, 397 U.S. at 445. Therefore, we agree with the Third Circuit's determination that "the liberty interest of a criminal defendant takes priority over the usual concerns for efficient judicial administration so often found in civil proceedings." *Pelullo*, 14 F.3d at 893.

Second, the *Hernandez-Uribe* court perfunctorily concluded the "general rule is that collateral estoppel, where applicable, applies equally whether the previous criminal conviction was based on a jury verdict or a plea of guilty." 515 F.2d at 22. Without further explanation, the court cited two cases in support of this sweeping claim, *Brazzell v. Adams*, 493 F.2d 489 (5th Cir. 1974) and *Hyslop v. United States*, 261 F.2d 786 (8th Cir. 1958). *Hernandez-Uribe*, 515 F.2d at 22.

In *Brazzell*, a state prisoner brought a 42 U.S.C. § 1983 action against the district attorney and state agents who participated in his arrest seeking damages

based on allegation of police conduct akin to entrapment. 493 F.2d at 489. The court concluded the doctrine of collateral estoppel could be applied against the prisoner plaintiff in a subsequent civil action against state agents as to facts necessarily admitted by his plea of guilty to the related criminal charge. *Id*. at 490. Similarly, *Hyslop* was a civil action brought by the United States under the False Claims Act, 31 U.S.C. § 231, seeking to recover forfeitures and damages. 261 F.2d at 787. The government had won a summary judgment based solely on evidence of the defendant's earlier plea of guilty to the related criminal charge of misbranding eggs for sale to the United States Army. *Id.* at 790. The defendant admitted that in an appropriate case the rule of collateral estoppel may be invoked," but contested its application to the facts of his case. *Id*. The court reversed the grant of summary judgment, determining the doctrine of collateral estoppel did not apply where the government failed to prove the determinative questions were directly put in issue and determined by the plea of guilty. *Id.* at 790-92.

We are convinced the *Brazzell* and *Hyslop* cases relied on by the Eighth Circuit simply do not support application of the collateral estoppel doctrine based on a plea of guilty against the defendant in a subsequent, unrelated criminal

proceeding. [6] These cases neither support nor explain the jump from applying the collateral estoppel doctrine against a defendant in a civil proceeding related to the underlying criminal transaction to which the defendant pled guilty, to applying the doctrine against a defendant whose liberty interest is at stake in a successive criminal proceeding arising from a different criminal transaction.

Third, the Eighth Circuit concluded a full adversary proceeding was not a prerequisite to collaterally estopping a criminal defendant because Federal Rule of Criminal Procedure 11 "protects the defendant from an improvident plea of guilty." *Hernandez-Uribe*, 515 F.2d at 22; *accord Bejar-Matrecios*, 618 F.2d at 83-84 (concluding it is "fair" to estop a defendant in a subsequent criminal proceeding based on a "knowing and voluntary" plea of guilty). However, while Fed. R. Crim. P. 11 does ensure that the defendant knowingly and voluntarily enters a plea for which there is a factual basis, *see McCarthy*, 394 U.S. 459; Fed.

---

[6] In dictum, the Ninth Circuit has sanctioned the use of a plea of guilty to collaterally estop a defendant in a subsequent criminal proceeding. *See Bejar-Matrecios*, 618 F.2d at 83-84. The court cited *Brazzell*, 493 F.2d at 490, and *Ivers v. United States*, 581 F.2d 1362 (9th Cir. 1978), for the so-called "general rule" that the collateral estoppel doctrine applies equally to guilty pleas and jury verdicts. *Bejar-Matrecios*, 618 F.2d at 83. Like *Brazzell* and *Hyslop*, *Ivers* was a *civil action* arising from a related criminal transaction to which the defendant had pled guilty. *Ivers*, 581 F.2d at 1366-67 (civil forfeiture action related to unlawful attempt to bring undeclared currency into the United States).

R. Crim. P. 11(c)-(f), Rule 11 safeguards are not tantamount to the full panoply of protections afforded by a jury trial. Of particular concern in considering the use of a guilty plea to collaterally estop a criminal defendant in a successive criminal proceeding is the lesser standard of proof required under Rule 11 than required under the Due Process Clause of the United States Constitution. *See* Fed. R. Civ. P. 11(f); U.S. Const. amend. XIV. The Supreme Court explicitly has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. at 364. By contrast, Fed. R. Crim. P. 11, as the *Hernandez-Uribe* court noted, requires only that the court taking the plea satisfy itself that "there is a factual basis for the guilty plea." [7] 515 F.2d at 22.

While we do not question the adequacy of the "factual basis" requirement in the context of accepting a guilty plea, it is a lower standard than the "beyond a

---

[7] Rule 11(f) provides:

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

Fed. R. Crim. P. 11(f).

reasonable doubt" standard required to satisfy the due process requirements of a criminal trial. *See, e.g., United States v. Alber*, 56 F.3d 1106, 1110 (9th Cir. 1995) (court accepting guilty plea "need not be convinced beyond a reasonable doubt" (internal quotation marks and citation omitted)); *United States v. Tunning*, 69 F.3d 107, 111-12 (6th Cir. 1995) ("'strong evidence of actual guilt' is not necessary to satisfy Rule 11(f), even where a defendant protests his innocence"); *United States v. Marks*, 38 F.3d 1009, 1012 (8th Cir. 1994) (factual basis established by "sufficient evidence at the time of the plea upon which the court may reasonably determine that the defendant likely committed the offense"), *cert. denied*, 514 U.S. 1067 (1995); *United States v. Fountain*, 777 F.2d 351, 357 (7th Cir. 1985) (Fed. R. Crim. P. 11(f) requires "some factual basis"), *cert. denied*, 475 U.S. 1029 (1986).

The Supreme Court has made it clear that differences in the proof requirements of subsequent proceedings may preclude application of the doctrine of collateral estoppel. *See Helvering v. Mitchell*, 303 U.S. 391, 397 (1938) (observing that differences "in degree of the burden of proof" may preclude application of the doctrine of *res judicata*). In *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984), the defendant sought to use his acquittal on the charge of dealing firearms without a license as collateral estoppel in the

subsequent *in rem* forfeiture proceeding against those firearms. Even though forfeiture was appropriate only if the jury in the forfeiture proceeding concluded the defendant had committed the underlying offense, the Court rejected the defendant's attempt to estop the government from relitigating his wrongdoing, concluding "[i]t is clear that the difference in the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel." *Id*. at 361-62. *See also One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235 (1972) (per curiam) (holding Double Jeopardy Clause did not bar a forfeiture action subsequent to acquittal on the underlying offense because differences in the burden of proof requirements precluded application of collateral estoppel doctrine).

While the case at bar concerns successive criminal proceedings, rather than a criminal case and a civil case, we are convinced the same logic applies. We conclude the Fed. R. Crim P. 11 "factual basis" requirement cannot satisfy the due process requirement that the government prove the essential elements of the charge "beyond a reasonable doubt" in a successive, unrelated criminal proceeding. Thus, the government's use of a guilty plea to collaterally estop a defendant from relitigating an issue in a subsequent criminal proceeding is contrary to the Due Process Clause.

-16-

We now hold that the government may not use a judgment following a plea of guilty to collaterally estop a criminal defendant from relitigating an issue in a subsequent criminal proceeding. [8] Accordingly, the government's attempted use of Mr. Gallardo-Mendez' earlier plea of guilty to collaterally estop him from contesting the issue of alienage in a subsequent criminal proceeding was constitutionally invalid. [9] Therefore, we **REVERSE** the judgment of conviction and **REMAND** the case to the district court for further proceedings consistent with this opinion.

---

[8] Although we do not list the ways in which the government may enter a defendant's prior conviction following a plea of guilty into evidence in a subsequent criminal proceeding, we emphasize that nothing in this opinion is intended to change the present law of this circuit.

[9] Because we decide this case under the Due Process Clause, we have no occassion to reach Mr. Gallardo-Mendez' Sixth Amendment claim, his sufficiency of the evidence claim, or the government's challenge to his sentence.