**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 20 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JESSICA JIRON,

       Plaintiff - Appellant,

v.

CITY OF LAKEWOOD;
LAKEWOOD POLICE
DEPARTMENT; CHARLES
JOHNSON, Chief of Police; and
OFFICER MARGARET HALPIN,

       Defendants - Appellees.

Nos. 02-1421, 02-1505

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 00-WM-2034 (BNB))**

---

Joseph J. Mellon (Kristin K. Potter with him on the briefs), Shughart Thomson &
Kilroy, P.C., for Plaintiff-Appellant Jessica Jiron.

Christina M. Habas, Bruno, Bruno & Colin, P.C., for Defendant-Appellee
Margaret Halpin.

J. Andrew Nathan (Andrew J. Fisher with him on the brief), Nathan, Bremer,
Dumm & Myers, P.C., for Defendants-Appellees City of Lakewood, Lakewood
Police Department, and Charles Johnson.

---

Before **EBEL,** Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**,
Circuit Judge.

---

**EBEL**, Circuit Judge.

Plaintiff Jessica Jiron brought this § 1983 action against the City of Lakewood, the Lakewood Police Department, Chief of Police Charles Johnson, and Officer Margaret Halpin alleging a violation of her Fourth and Fourteenth Amendment right to be free from the use of excessive force. Plaintiff claims that Officer Halpin used excessive force in shooting Plaintiff during the course of Plaintiff's arrest and that the other defendants inadequately trained and supervised Officer Halpin. The district court granted summary judgment in favor of Officer Halpin on the basis of qualified immunity and dismissed Plaintiff's claims against the remaining defendants. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

## BACKGROUND

At about 4:00 p.m. on October 13, 1998, Police Officer Margaret Halpin responded to a report of the presence of two drunk girls at an apartment complex in Lakewood, Colorado. While Officer Halpin was on her way to the complex, dispatch alerted her that these two girls were suspected of having stolen a purse. At the scene, Officer Halpin confronted fifteen-year-old Plaintiff Jessica Jiron, one of the two suspects. When Officer Halpin tried to handcuff Plaintiff, Plaintiff ran into her sister's second story apartment. Officer Halpin followed her. In the

apartment, Plaintiff ran into the kitchen, grabbed a 6- to 10-inch knife, and ran toward the back bedroom.

Officer Halpin called for emergency backup as she headed toward the back bedroom. There were two means by which Plaintiff could exit the bedroom – through a window and through the bedroom door. Officer Halpin had intended to keep Plaintiff in that bedroom until she could get sufficient backup on the scene to resolve the situation peacefully. Officer Halpin's plan changed when she heard Plaintiff attempting to escape through the bedroom window. In response to Plaintiff's escape attempt, Officer John Griffith, another law enforcement officer on the scene, went downstairs and outside to cover the window.

In the meantime, Officer Halpin opened the bedroom door and noticed that Plaintiff had the knife in her hand as she attempted to escape out the window. Plaintiff had successfully cut the window screen and had one leg out the window. Officer Halpin ordered her to stop, and Plaintiff turned around and came at the bedroom door with the knife in her hand. Officer Halpin retreated down the hallway, and Plaintiff closed the bedroom door and went back into the bedroom. Officer Halpin then walked back down the hallway, opened the bedroom door, and saw Plaintiff again working at the window. Plaintiff again turned around and came at Officer Halpin with a knife. Officer Halpin again retreated down the hallway, and Plaintiff again closed the bedroom door.

Officer Halpin once more walked back down the hallway, opened the bedroom door, and, through the crack between the wall and the door, saw Plaintiff hiding behind the bedroom door. Officer Halpin repeatedly ordered Plaintiff to exit the bedroom and drop her knife. Plaintiff finally exited the bedroom into the hallway, put the knife up to her chin, and told Officer Halpin that she would kill herself. Although up to this point Plaintiff had been crying, screaming, yelling, and cursing, when she exited the bedroom she became very calm, was no longer crying, and had a "fixed, determined stare" on her face.

According to Officer Halpin's assessment of the situation, Plaintiff had apparently decided "[s]he wasn't going to put up with anything else." Officer Halpin reported that Plaintiff began advancing toward Officer Halpin as Officer Halpin demanded that Plaintiff drop her weapon. Officer Halpin, with gun drawn, told Plaintiff, "If you don't stop where you are, I'll have to kill you here." Plaintiff responded, "Okay. Kill me." About five feet from where Officer Halpin stood, Plaintiff turned the knife toward her (Officer Halpin), raised it up, and started "hacking it in the air." Officer Halpin then shot Plaintiff once in the abdomen, and Plaintiff fell to the floor.

Plaintiff was then charged under Colorado law with: (1) attempted murder of a police officer; (2) first degree assault; (3) second degree burglary; (4) theft; and (5) felony menacing. Plaintiff pled guilty to felony menacing and second

degree burglary. At the plea proceeding Plaintiff stipulated to the use of the record as the factual basis for her plea. That record included Officer Halpin's preliminary hearing testimony that Plaintiff hacked the knife in the air as she advanced toward Officer Halpin. Plaintiff agreed at the plea proceeding that she was pleading guilty to having knowingly placed a police officer "in fear of imminent serious bodily injury by the use of a knife using threats or physical actions." Even after the trial court told Plaintiff during the plea proceeding that he "can't let someone walk into this court and plead guilty to something she didn't commit," Plaintiff continued to express a desire to enter a plea of guilty. The court accepted her plea, sentenced Plaintiff to six years imprisonment, and dismissed the remaining counts.

Plaintiff then brought this action, alleging a violation of 42 U.S.C. § 1983 against the City of Lakewood, the Lakewood Police Department, the Chief of Police, and Officer Halpin. Plaintiff claims that Officer Halpin violated her Fourth and Fourteenth Amendment right to be free from the use of excessive force and that the other defendants exhibited deliberate indifference to Plaintiff's rights through inadequate training and supervision of Lakewood police officers. In this § 1983 action, Plaintiff disputes the facts that led to her conviction by guilty plea in Colorado court. Specifically, Plaintiff testified in a deposition in this case that after she exited the bedroom she did not advance toward Officer

Halpin and that Officer Halpin shot her as she stood in place holding the knife to her own throat.

The district court granted summary judgment in favor of Officer Halpin, concluding that Officer Halpin was entitled to qualified immunity because Officer Halpin's use of force was objectively reasonable. The district court also dismissed Plaintiff's claims against the remaining defendants. Plaintiff timely filed this appeal. She argues that the district court erred in granting summary judgment in favor of Officer Halpin on the basis of qualified immunity and in dismissing Plaintiff's claims against the remaining defendants.[1]

_____

[1] The district court also determined that Plaintiff's claims against Officer Halpin should be dismissed under Heck v. Humphrey, 512 U.S. 477 (1994), which prohibits § 1983 actions that would, if successful, necessarily imply the invalidity of the plaintiff's conviction or sentence. Plaintiff concedes that her claim that Officer Halpin did not have justification to shoot her, at the moment of the shooting, is barred by Heck. However, Plaintiff asserts that Heck does not bar her claim that Officer Halpin recklessly allowed the dangerous confrontation to occur in the first instance. Because the district court dismissed Plaintiff's entire set of claims, with prejudice, and because Heck at best would only support a dismissal without prejudice, we turn to an evaluation of the substance of Plaintiff's claims. See Okoro v. Bohman, 164 F.3d 1059, 1061 (7th Cir. 1999) (noting that Heck is not jurisdictional). Because we find this evaluation dispositive, we need not address the Heck issue here.

Moreover, it is unclear whether Heck even applies in this case. It appears from the record that Plaintiff is no longer "in custody" for this offense. Therefore, she has no vehicle, such as a petition for a writ of habeas corpus, available to her by which she could seek to challenge the underlying felony menacing conviction. Five Justices of the Supreme Court have now concluded that Heck does not apply when a plaintiff is not in custody. See Spencer v. Kemna, 523 U.S. 1 (1998). Accordingly, even if we were to reach the issue, Heck

(continued...)

## DISCUSSION

### A. Summary Judgment for Officer Halpin

We review a grant of summary judgment on the basis of qualified immunity *de novo*. Foote v. Spiegel, 118 F.3d 1416, 1424 (10th Cir. 1997). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We construe the record in the light most favorable to the non-moving party. Reed v. McKune, 298 F.3d 946, 949 (10th Cir. 2002).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The privilege "is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. Accordingly, qualified immunity questions should be resolved at the earliest possible stage in litigation. Saucier v. Katz, 533 U.S. 194, 201 (2001). "[E]ven such pretrial matters as discovery are to be avoided if possible, as inquiries of this kind can be peculiarly disruptive of effective government." Mitchell, 472 U.S. at 526 (internal quotations omitted).

---

[1](...continued)
may not be dispositive of the instant appeal.

After a defendant pleads qualified immunity, the plaintiff in a case like this one, which alleges a violation of the Fourth and Fourteenth Amendments, must demonstrate that the defendant's actions violated a specific constitutional right. Saucier, 533 U.S. at 201. If the plaintiff fails to meet his or her burden on this threshold inquiry, the qualified immunity inquiry comes to an end. Id. If the plaintiff meets this initial burden, he or she must then show that the constitutional right was "clearly established" prior to the challenged official action. Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Holland v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001) (internal quotations omitted). This requirement that the right have been "clearly established" is designed to protect "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Accordingly, we first address whether Officer Halpin's use of force against Plaintiff violated Plaintiff's Fourth and Fourteenth Amendment right to be free from the use of excessive force. Excessive force claims are evaluated under the Fourth Amendment standard of objective reasonableness. Graham v. Connor, 490 U.S. 386, 396-97 (1989). "Because police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly

- 8 -

evolving – about the amount of force that is necessary in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." Saucier, 533 U.S. at 205 (internal citations and quotations omitted). Use of the "20/20 vision of hindsight" is not permitted. Id. (internal quotations omitted). Furthermore, officers are not required to use alternative, less intrusive means if their conduct is objectively reasonable. Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001).

In evaluating an excessive force claim, courts are to consider the totality of the circumstances. Sevier v. City of Lawrence, 60 F.3d 695, 699 (10th Cir. 1995). Among the factors to consider are the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)). "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed." Saucier, 533 U.S. at 205.

The reasonableness of the use of force depends not only on whether the officers were in danger at the precise moment that they used force, but also on whether the officers' own "reckless or deliberate conduct during the seizure unreasonably created the need to use such force." Sevier, 60 F.3d at 699 (internal

footnote omitted). This rule "is simply a specific application of the 'totality of the circumstances' approach inherent in the Fourth Amendment's reasonableness standard." Medina, 252 F.3d at 1132. Only events "immediately connected" with the actual seizure may be considered, and "[m]ere negligent actions precipitating a confrontation would not, of course, be actionable under § 1983." Sevier, 60 F.3d at 699 & nn.7-8.

Applying these standards, we have said that "deadly force [is] justified under the Fourth Amendment if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others."[2] Id. at 699. In other words, "[a]n officer's use of deadly force in self-defense is not constitutionally unreasonable." Romero v. Bd. of County Comm'rs, 60 F.3d 792, 703-04 (10th Cir. 1995) (holding that officer acted reasonably in shooting suspect coming at him with knife in attack position); see also Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995), *abrogated on other grounds by Saucier*, 533 U.S. at 205 (holding that officer acted reasonably in shooting suspect who was pointing gun in officer's direction). In this case, Plaintiff argues that Officer Halpin's use of deadly force

---

[2]Deadly force is "force that the actor uses with the purpose of causing or that he knows to create a substantial risk of causing death or serious bodily harm. Purposely firing a firearm in the direction of another person . . . constitutes deadly force." Ryder v. City of Topeka, 814 F.2d 1412, 1416 n.11 (10th Cir. 1987) (approving Model Penal Code definition).

against Plaintiff was excessive because Plaintiff had not threatened to harm Officer Halpin and because Officer Halpin recklessly and deliberately created a situation in which deadly force was necessary. We address each argument in turn.

**1. Whether Officer Halpin's use of force was excessive because Plaintiff threatened no harm to Officer Halpin at the moment of the shooting**

Plaintiff first argues that Officer Halpin's use of force against Plaintiff was unreasonable because Plaintiff never threatened to harm Officer Halpin but only threatened to harm herself. Officer Halpin responds that Plaintiff is collaterally estopped from making this argument by virtue of Plaintiff's prior conviction by plea of guilty to felony menacing. Accordingly, we must determine whether a guilty plea can have preclusive effect in a subsequent civil proceeding and, if so, whether Plaintiff's guilty plea has preclusive effect in this § 1983 action.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give the same preclusive effect to a state-court judgment that the judgment would be given in the courts of the state in which the judgment was rendered. Allen v. McCurry, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738); Dixon v. Richer, 922 F.2d 1456, 1459 (10th Cir. 1991). Under Colorado law, collateral estoppel bars relitigation of an issue if (1) the issue sought to be precluded is identical to an issue "actually determined" in the prior proceeding; (2) the party against whom

- 11 -

estoppel is asserted was a party to or in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding. Sunny Acres Villa, Inc. v. Cooper, 25 P.3d 44, 47 (Colo. 2001).

Although Sunny Acres Villa is a recent statement by the Supreme Court of Colorado of the four elements of collateral estoppel, that court has previously articulated the first element of the analysis in a slightly different manner. Specifically, the court has articulated the first element to require that "[t]he issue precluded is identical to an issue *actually litigated and necessarily adjudicated* in the prior proceeding." Bebo Constr. Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 84-85 (Colo. 1999) (emphasis added). The court clarified that "actually litigated and necessarily adjudicated" is simply a way of defining the term "actually determined." Id. at 85 n.3 (stating that when an issue is properly raised, submitted for determination, and determined, "the issue is actually litigated") (citing Restatement (Second) of Judgments § 27 cmt. d (1980)). Accordingly, the essential inquiry under the first element is whether the issue sought to be precluded was "actually determined" in the prior proceeding.

Whether the elements of a crime are issues "actually determined" in a guilty plea proceeding, giving them preclusive effect in a subsequent proceeding,

has not been directly decided by the Colorado courts. In People ex rel. Attorney General v. Edison, 69 P.2d 246 (Colo. 1937), however, the Supreme Court of Colorado distinguished a plea of guilty from a plea of nolo contendere by stating that a plea of guilty is a "confession binding defendant in other proceedings." Id. at 248. The Supreme Court of Colorado made a similar distinction in Jones v. District Court, 584 P.2d 81, 83 (Colo. 1978). In Jones, the court said that "[g]enerally a plea of Nolo contendere is equivalent to a guilty plea only for the purposes of that criminal proceeding. The Nolo plea cannot be relied upon as an admission of the facts underlying the plea in any civil suit arising out of the same act." Id. (citing Edison, 69 P.2d at 246). Although the relevant statements in both Edison and Jones were dicta, it appears from these cases that the courts of Colorado would accord preclusive effect to a guilty plea in a subsequent civil proceeding.[3]

---

[3]In Haring v. Prosise, 462 U.S. 306 (1983), the United States Supreme Court applied Virginia law on collateral estoppel to hold that a § 1983 plaintiff was not collaterally estopped by his prior plea agreement from litigating his Fourth Amendment claim. Id. at 316. The court interpreted Virginia law on collateral estoppel as drawing a distinction between the terms "actually litigated" and "determined." See id. (stating that "no issue was 'actually litigated' in the state proceeding since Prosise declined to contest his guilt in any way" but that the elements of the crime were "raised by the criminal indictment and determined by Prosise's guilty plea"). As we have discussed, the Supreme Court of Colorado appears to have rejected such a distinction. Accordingly, Haring is not helpful to our analysis.

There are opinions from federal district courts in Colorado that have expressed the view that Colorado state courts would not give preclusive effect to guilty pleas. See McCormick v. United States, 539 F. Supp. 1179, 1183 (D. Colo. 1982); Cook v. Rockwell Int'l Corp., 181 F.R.D. 473, 487 (D. Colo. 1998). However, these federal decisions are not binding on questions of state law.

Our conclusion that a plea of guilty entered in Colorado state court can have preclusive effect in a subsequent civil proceeding does not disturb our holding in United States v. Gallardo-Mendez, 150 F.3d 1240 (10th Cir. 1998). In Gallardo-Mendez, we held that a court could not, consistent with the Due Process Clause, accord preclusive effect to a guilty plea in a subsequent *criminal* proceeding. Id. at 1246. Although we did not expressly approve the application of collateral estoppel to guilty pleas in subsequent *civil* proceedings, we did distinguish the application of collateral estoppel to guilty pleas in subsequent civil proceedings from that in subsequent criminal proceedings. Id. at 1244 ("[W]hile wise public policy and judicial efficiency may be sufficient reasons to apply collateral estoppel in civil cases, they do not have the same weight and value in criminal cases.") (internal quotations omitted).[4]

---

[4]Other courts of appeals similarly accord preclusive effect to guilty pleas in subsequent civil proceedings. See United States v. Real Prop. Located at Section 18, 976 F.2d 515, 519 (9th Cir. 1992) ("[I]t is settled law in this circuit that a guilty plea may be used to establish issue preclusion in a subsequent civil suit.");

(continued...)

In sum, we conclude that a party who has pled guilty to a crime in Colorado state court is collaterally estopped from relitigating the elements of that crime in a subsequent civil proceeding.[5]

In this case, Plaintiff pled guilty in Colorado state court to felony menacing, in violation of Colo. Rev. Stat. § 18-3-206. Felony menacing is "knowingly plac[ing] or attempt[ing] to place another person in fear of imminent serious bodily injury" by use of a deadly weapon.[6] Colo. Rev. Stat. § 18-3-206. At the plea proceeding, Plaintiff agreed that she had placed another person, a

_____

[4](...continued)
Appley v. West, 832 F.2d 1021, 1026 (7th Cir. 1987) ("[A] guilty plea may be used to establish issue preclusion in a subsequent civil suit."). Both of these cases deal with applications of federal law, and not the particular state law at issue here; however, the consistency of the practice is persuasive.

[5]We emphasize that our holding is based on the collateral estoppel law of the state of Colorado. We might reach a different result in a future case if applying the collateral estoppel law of a different jurisdiction.

[6]Under Colo. Rev. Stat. § 18-3-206:

(1) A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but, it is a class 5 felony if committed:

(a) By the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon; or

(b) By the person representing verbally or otherwise that he or she is armed with a deadly weapon.

- 15 -

police officer, in fear of "imminent serious bodily injury by the use of a knife using threats or physical actions." Plaintiff now asserts that she threatened only harm to herself and in no way verbally or physically threatened Officer Halpin.

Plaintiff is attempting to relitigate an element of the crime to which she pled guilty. Because the elements of the crime of felony menacing were issues raised and determined in the plea proceeding and because the other elements of collateral estoppel are satisfied, Plaintiff is precluded under the doctrine of collateral estoppel from now relitigating an element of that crime. Accordingly, we must assume for the purposes of this case that Plaintiff did place Officer Halpin in fear of "imminent serious bodily injury" by use of a deadly weapon.

As discussed above, the law is clear that the use of deadly force is constitutionally permissible if a reasonable officer in the defendant's position would have had probable cause to believe that there was "a threat of serious physical harm to themselves or to others." Sevier, 60 F.3d at 699. Because Plaintiff placed Officer Halpin in fear of "imminent serious bodily injury" with a deadly weapon, Officer Halpin's use of deadly force to defend herself was clearly reasonable. See Napier v. Town of Windham, 187 F.3d 177, 184-85 (1st Cir. 1999) (holding that where it was established by prior criminal conviction that civil rights plaintiff placed officer in fear of imminent bodily injury with dangerous weapon and recklessly created substantial risk of serious bodily injury

to officer with dangerous weapon, officer's firing single shot in self-defense was objectively reasonable). Accordingly, Plaintiff's argument that Officer Halpin's use of force was excessive because Plaintiff did not threaten to harm Officer Halpin is without merit.

### 2. Whether Officer Halpin recklessly and deliberately created the need to use force

Plaintiff next argues that Officer Halpin recklessly and intentionally created a situation in which deadly force was necessary by cornering Plaintiff in the back bedroom, repeatedly ordering Plaintiff out of the bedroom, and attempting to open the bedroom door even though Plaintiff had no means of escape.

The facts on which Plaintiff bases her argument that Officer Halpin recklessly and deliberately created the need to use force are undisputed. Plaintiff ran into her sister's apartment, grabbed a knife, ran into the back bedroom, closed the bedroom door, and threatened to kill herself. Officer Halpin then called for backup and planned to await the arrival of backup rather than attempt to coax Plaintiff out of the bedroom herself. Plaintiff then tried to escape from the bedroom with the knife through the window. In response, Officer Halpin sent Officer Griffith to secure the area outside that window. Officer Halpin then repeatedly ordered Plaintiff to exit the bedroom and drop her weapon and repeatedly tried to enter the bedroom herself.

- 17 -

Officer Halpin's decision to coax Plaintiff out of the bedroom instead of awaiting the arrival of backup was far from reckless. Had Officer Halpin left Plaintiff in the bedroom, she risked the escape of an armed and agitated suspect into the public and risked a potentially more violent confrontation between Officer Griffith and Plaintiff as Plaintiff attempted to escape out the bedroom window. Perhaps the situation might have been more peacefully resolved had Officer Halpin waited for backup to arrive. We cannot answer that question, nor is this kind of retrospective inquiry relevant. We evaluate the officer's reasonableness from the on-scene perspective, not with the advantage of 20/20 hindsight. See Saucier, 533 U.S. at 205. The facts suggest that Officer Halpin adequately performed her duties as a reasonable law enforcement officer by taking steps to prevent an armed and agitated suspect from escaping. See Medina, 252 F.3d at 1132 (holding that officers did not unreasonably create need to use force by failing to take cover and instead preventing a suspect they believed to be armed from escaping); Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1319-20 (10th Cir. 1998) (holding that entry of apartment after officers had spent hours trying to resolve situation peacefully was not reckless and deliberate creation of need to use excessive force).

Although Plaintiff cites Sevier, 60 F.3d at 695 to support the proposition that Officer Halpin recklessly and deliberately created the need to use force, we

find Sevier distinguishable. In Sevier, three police officers arrived at the home of a suicidal twenty-two-year-old in the middle of the night, opened the door to his bedroom, and confronted him with their guns drawn when he emerged. See id. at 698. The victim was not suspected of having committed any crime, and the officers had no reason to suspect that he posed any threat to others while he remained in his room. See id. In contrast, in this case Officer Halpin's actions were taken in response to the attempted escape of a felony suspect, with deadly weapon in hand, out a window that may or may not have been secured.

For these reasons, Plaintiff has failed to allege facts supporting the violation of a constitutional or statutory right and, accordingly, has not met her initial burden under the qualified immunity analysis. Having found no violation of a constitutional or statutory right, we need not address whether any such right was "clearly established." The district court correctly held that Officer Halpin was entitled to qualified immunity.

**B. Dismissal of Claims Against the City of Lakewood,
the Lakewood Police Department, and the Chief of Police**

We review dismissals pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo*.[7] Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 556 (10th Cir. 1999).

A plaintiff suing a municipality under § 1983 for the actions of one of its officers must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. Myers, 151 F.3d at 1316. In City of Los Angeles v. Heller, 475 U.S. 796 (1986), the Supreme Court noted that a municipality cannot be liable under § 1983 if the officer in fact inflicted no constitutional harm. Id. at 799; see also Myers, 151 F.3d at 1316; Hinton v. City of Elwood, 997 F.2d 774, 783 (10th Cir. 1993).

In this case, the district court concluded that Plaintiff had not proved a constitutional violation because Officer Halpin's conduct was objectively reasonable. Per the above discussion, we agree. Our conclusion precludes a § 1983 action against the remaining defendants. See Hinton, 997 F.2d at 783.

---

[7]Although the district court did not cite Rule 12(b)(6), we presume the court dismissed the remaining claims under that Rule.

Accordingly, the district court properly dismissed Plaintiff's claims against the remaining defendants.[8]

## CONCLUSION

Officer Halpin's use of force against Plaintiff was objectively reasonable. Accordingly, we conclude that the district court correctly granted summary judgment to Officer Halpin on the basis of qualified immunity and properly dismissed Plaintiff's claims against the remaining defendants. The judgment of the district court is AFFIRMED.

_____

[8]Plaintiff argues that dismissal of the claims against the remaining defendants was improper because summary judgment was granted to Officer Halpin on the basis of qualified immunity. Plaintiff is correct that some dismissals against the officer on the basis of qualified immunity do not preclude a suit against the municipality. See Hinton, 997 F.2d at 782 (10th Cir. 1993) ("[A] finding of qualified immunity does not shelter a municipality from liability."). However, when a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation – i.e., the first step of the qualified immunity analysis – a finding of qualified immunity *does* preclude the imposition of municipal liability. Id. at 782-83.