FILED
United States Court of Appeals
Tenth Circuit

**January 2, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ESTATE OF LYLE EUGENE
LARSEN, by and through Florence
Sturdivan, personal representative,

      Plaintiff-Appellant,

    v.

RANDY MURR, GERALD
WHITMAN, Chief of Police of the
City and County of Denver, and CITY
AND COUNTY OF DENVER,

      Defendants-Appellees.

No. 06-1094

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 03-CV-2589-MSK(MEH))**

---

Andrew B. Reid, Walter L. Gerash Law Firm, P.C., Denver, Colorado, for
Plaintiff-Appellant.

Thomas S. Rice (Brett A. McDaniel, Senter Goldfarb & Rice, L.L.C., and John
Eckhardt, Assistant City Attorney, Office of the Denver City Attorney, with him
on the brief), Senter Goldfarb & Rice, L.L.C., Denver, Colorado, for Defendants-
Appellees.

---

Before **MURPHY**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Responding to a 911 emergency call, a Denver police officer shot and killed Lyle Eugene Larsen outside his home. Larsen's next of kin brought a 42 U.S.C. § 1983 suit against (1) the officer for excessive force in violation of the Fourth Amendment, and (2) the City and County of Denver and its police chief regarding the City's deadly force policy. The district court granted summary judgment against Larsen's Estate on all claims, and this appeal followed.

Finding no constitutional violation, we AFFIRM the district court's grant of summary judgment.

## I. Background

After midnight on April 15, 2003, Lyle Larsen called 911 threatening to "kill someone or himself." Aplt. App. 124. Officers Randy Murr and David Brase were dispatched to Larsen's residence and arrived in separate vehicles. They parked on the street near the home and approached by foot from different directions. The home had a front porch and a small front yard separated from the street by a three- to four-foot high retaining wall. A concrete stairway of six steps connected the yard to a sidewalk in front of Larsen's house, with an iron railing down the middle of the steps. Some shrubbery also sat atop the retaining wall on one side of the stairs.

As the officers approached the house, Larsen stood alone on the front porch. In his hands, he held a large knife with a blade over one foot long.

Because of its size, Murr initially thought the knife was a pipe. Officer Brase, who at first had a better angle, described the knife as looking like "a small sword." Supp. App. 20. As they neared Larsen, Brase warned Murr that Larsen was armed, and both men drew their service pistols. Brase told Larsen in a loud voice: "I'm Corporal Brase, the Denver police. I need you to put that knife down right now." *Id.*

Larsen appeared to bend over, as if intending to place the knife on the ground, but then straightened up with the weapon still in his hand. Although the record is unclear as to the exact distance, Murr believed Larsen was within 7 to 12 feet. Larsen's eyes became "the size of quarters." Aplt. App. 86. Appearing agitated, he raised the knife above his shoulder with the blade pointed outward and turned towards Officer Murr. Brase heard Murr tell Larsen to "Drop the knife, drop the knife, drop the [expletive] knife." Supp. App. 22. A few seconds later, Murr again told Larsen, "Drop the knife or I'll shoot." Aplt. App. 86. Larsen turned and took a step towards Murr, who was on the sidewalk below. Fearing for his life, Murr fired twice, hitting Larsen in the chest and killing him. Officer Brase held his fire during the encounter, but later stated that he too was prepared to use force at the time of the shooting and was maneuvering into position when Murr fired.

No other eyewitnesses observed the shooting.

## II. Discussion

Appellant claims Officer Murr used excessive force during the encounter in violation of the Fourth Amendment. It also claims the City and County of Denver and the police chief failed to adequately train and supervise police officers concerning the use of deadly force. The district court granted summary judgment on all claims, finding Murr's use of force was not unreasonable in the circumstances. Absent an unreasonable use of force, the court determined the officer was immune from suit on the basis of qualified immunity, and Appellant had not shown a constitutional violation that would enable it to prevail on its other claims.

### A. Standard of Review

We review *de novo* a grant of summary judgment based on qualified immunity. *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004). Summary judgment is appropriate if there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We construe the record in the light most favorable to the nonmoving party. *Jiron*, 392 F.3d at 414. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) (citations omitted).

Reviewing summary judgment in the qualified immunity context involves a two-part inquiry. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007). First, the plaintiff must establish the defendant violated a constitutional right. If no constitutional violation is established by the plaintiff's allegations or the record, our inquiry ends. But if a constitutional right was violated, we next ask if the constitutional right was clearly established. To be clearly established, either Supreme Court or Tenth Circuit precedent must be on point or the clearly established weight of authority from other courts must agree with plaintiff's contention. *Id.* at 1114–15.

### B. Fourth Amendment Violation

Appellant claims the officer's use of deadly force violated the Fourth Amendment. Our case law involving claims against police officers for the use of excessive force provides the framework to assess the claim and the district court's grant of summary judgment.

### 1. Legal Framework

We treat excessive force claims as seizures subject to the reasonableness requirement of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To establish a constitutional violation, the plaintiff must demonstrate the force used was objectively unreasonable. Thus the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

Moreover, because "'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation,' the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Saucier v. Katz*, 533 U.S. 194, 205 (2001) (quoting *Graham*, 490 U.S. at 397).

We assess objective reasonableness based on "whether the totality of the circumstances justified the use of force," and "pay careful attention to the facts and circumstances of the particular case." *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995) (internal quote and alteration marks omitted). In this case, Appellant's claim of excessive force centers on whether Larsen posed an immediate threat to the officers or the safety of others. *See Jiron*, 392 F.3d at 415. "Deadly force is justified under the Fourth Amendment if a reasonable officer in Defendants' position would have had probable cause to believe that there was a *threat of serious physical harm to themselves* or to others." *Id.* at 415 (quoting *Sevier*, 60 F.3d at 699) (emphasis supplied). Indeed, even "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed." *Id.* (quoting *Saucier*, 533 U.S. at 205). A reasonable officer need not await the "glint of steel" before taking self-protective action; by then, it is "often . . . too

late to take safety precautions." *People v. Morales*, 603 N.Y.S.2d 319, 320 (N.Y. App. Div. 1993).

In assessing the degree of threat facing officers, then, we consider a number of non-exclusive factors. These include (1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect. *See, e.g.*, *Walker v. City of Orem*, 451 F.3d 1139, 1159 (10th Cir. 2006); *Jiron*, 392 F.3d at 414–15; *Zuchel v. Spinharney*, 890 F.2d 273, 274 (10th Cir. 1989).

But in the end the inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force. *See Sevier*, 60 F.3d at 699.

### 2. *Application*

Applying these principles here, the district court did not err in granting summary judgment.

Based on the totality of the circumstances facing the responding officers, a number of undisputed facts support the heightened immediacy of the threat they faced and the objective reasonableness of the use of deadly force: (1) Larsen had already threatened violence against himself and others; (2) the officers responded to an emergency call late at night; (3) when the officers arrived, they encountered

a man armed with a knife; (4) both officers repeatedly told Larsen to put down the knife; (5) the knife was a large weapon with a blade over a foot in length rather than a mere pocket knife or razor blade; (6) Larsen refused to cooperate with the officers' repeated orders to drop his weapon; (7) Larsen held the high ground vis-a-vis the officers; (8) Larsen raised the knife blade above his shoulder and pointed the tip towards the officers; (9) Officer Brase was also prepared to use force and was moving into position to be able to do so; (10) Larsen turned and took a step toward Officer Murr; (11) the distance between Murr and Larsen at the time of the shooting, though disputed, was somewhere between 7 and 20 feet.[1]

Examining the totality of the circumstances and the undisputed facts, we agree with the district court that the officer's use of deadly force was objectively reasonable. This is a prototypical case where police officers were "forced to make split-second judgments," and even if Officer Murr's assessment of the threat was mistaken, it was not objectively unreasonable.

*a. Alleged Disputes of Fact*

The Appellant argues two genuine disputes of material fact preclude summary judgment in this case. First, it argues Officer Murr provided inconsistent testimony about the circumstances of the shooting, and second, the distance separating Officer Murr from Larsen is subject to dispute. But the "mere

---

[1] Denver's use of force policy training manual instructs that knife-wielding persons within 21 feet pose an "imminent threat" to officers based on the time in which the distance can be closed in an attack. Aplt. App. 427.

-8-

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott*, 127 S. Ct. at 1776 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986)). Neither of the alleged disputes of fact is material to the totality of the circumstances we considered above.

*Murr's Testimony.* Appellant suggests Officer Murr provided inconsistent testimony immediately after the shooting and at a later deposition. Appellant argues the discrepancies in Murr's testimony create a genuine dispute regarding whether Murr's use of force was reasonable. At a debriefing interview the morning of the shooting Murr told investigators, "Once he turned an' pointed the knife at me an' faced me, I shot twice." Aplt. App. 42–43. Later, during a deposition, Murr testified that Larsen, after first appearing to comply with the order to drop the knife, "stood back up with the knife in his right hand, raise[d] the knife up past his chest above his shoulder, turned towards me looked at me and took one step towards me." *Id.* at 85.

The debriefing interview statement is hardly inconsistent with Murr's later testimony that Larsen took a step toward him. For one thing, the deposition testimony responded to detailed questions and painted a moment-by-moment description of the shooting. The debriefing interview, in contrast, provided a

-9-

broad brush review of the shooting, with the officer responding to open-ended questions. Neither statement precludes the other.

Both of Murr's statements, moreover, are entirely consistent with the contemporaneous statement of Officer Brase the morning of the shooting. Brase said he "saw the blade come up again . . . an' he [Larsen] turned towards Corporal Murr. . . . And then I could see this movement going in that direction . . . an' then I heard two gunshots." *Id.* at 45. Even if we could see a conflict among these statements, a minor discrepancy does not amount to a dispute of *material* fact for the jury precluding summary judgment.

*Distance from Larsen to Murr.* Officer Murr testified the distance between him and Larsen was between 7 and 10 feet, but Appellant points to a deposition exhibit that suggests the distance might have been as far as 20 feet. Based on this uncertainty, Appellant argues that taking the facts in the light most favorable to it, the distance was so great that—as a matter of law—no reasonable officer would have used deadly force.

In assessing objective reasonableness, we employ no bright line rules, and in a totality of the circumstances analysis, distance is but one factor of many. Our cases decline to adopt a *per se* rule where distance alone would create a fact question as a matter of law. The district court considered distance in its totality of the circumstances analysis, properly crediting the facts most favorable to

Appellant,[2] and concluded the totality supported the use of force as a matter law. We agree.

Appellant relies on two cases involving fatal police shootings. These cases illustrate why we consider the totality of the circumstances, but neither supports the proposition that any particular distance makes the use of force unreasonable.

In the first case, *Zuchel v. Spinharney*, 890 F.2d 273 (10th Cir. 1989), we concluded summary judgment was improper where disputed facts called into question the immediacy of the threat facing the officer. One witness, for example, claimed that the distance between the officer and a knife-wielding decedent was only three and a half feet. *Id.* at 275. But another witness testified the officer and the decedent were 10 to 12 feet apart at the time of the shooting. *Id.* Other factual disputes involved whether the officers could reasonably think the decedent was armed when he in fact was holding fingernail clippers, whether the decedent had made a stabbing motion, and whether the officers had warned the decedent to drop his weapon. *Id.*

---

[2] For purposes of summary judgment, the district court accepted a range of 15 to 20 feet, a number advocated by Appellant based on a handwritten not-to-scale drawing produced at Murr's deposition. The outer range accepted by the court is generous since the exhibit on which it is based shows Murr must have been inside a light pole that a police drawing indicates was no further than 15 feet from Larsen's body. Aplt. App. 33–34. Appellant's expert testified Murr was likely within 18 feet. *Id.* at 136. Neither party presented scale drawings to the district court.

In a second case, *Walker v. City of Orem*, 451 F.3d 1139, 1160 (10th Cir. 2006), we also found fact questions remained regarding the level of threat facing officers responding to a knife-wielding suspect.  One fact supporting the absence of a threat was the distance of more than 21 feet between the officer and the decedent.  *Id.* at 1144–45, 1158.  But the plaintiff also presented disputed evidence that the scene was bright enough for officers to see clearly, that the decedent's weapon was a two-inch blade, which he was holding against his own wrist, that the officers issued no warnings, that the decedent was not behaving aggressively and was not facing the officers, and that officers knew the decedent was suicidal but not homicidal.  *Id.* at 1157–59.

In both *Zuchel* and *Walker*, the totality of the circumstances presented a factual dispute about whether the officer reasonably perceived a threat. Eyewitnesses contested the degree of danger facing the officer at the time deadly force was exercised.  Admittedly, one of the disputed facts in *Zuchel* and *Walker* involved the distance between the officer and the decedent, but while distance is one factor in assessing the immediacy of threat, it is not the only one.  In this case, the question of distance is unpersuasive when we consider the other undisputed facts in their totality.[3]

---

[3] Other excessive force cases involving knife-wielding suspects have been resolved on summary judgment.  *See, e.g.*, *Jiron*, 392 F.3d at 410; *Romero v. Bd. of County Comm'rs*, 60 F.3d 702 (10th Cir. 1995).

*b. Additional Circumstances*

Appellant also argues the district court failed to adequately account for two circumstances that minimized the threat Larsen presented.[4] It claims (1) a number of barriers blocked the way between Larsen and Murr, and Murr therefore could not reasonably have perceived a threat, and (2) Larsen's physical behavior was not sufficiently provocative to justify Murr's use of force because he made no lunging or stabbing motions. The facts underlying these arguments are not in question: the physical characteristics of the scene are undisputed, and the uncontradicted testimony regarding Larsen's physical behavior is that Larsen raised a knife above his shoulder and stepped toward Officer Murr. We think the district court's analysis adequately incorporated these circumstances in concluding the totality of the circumstances justified the use of force.

*Barriers.* Appellant argues force was unnecessary because of physical barriers between Murr and Larsen, including a retaining wall, shrubbery, and an iron railing down the middle of the front sidewalk stairs. These facts do not create a jury issue.

---

[4] Appellant raises several other minor points that we can quickly dismiss. Investigators determined after the shooting that Larsen had been drinking. But Murr did not know that Larsen had been drinking, and Larsen's behavior before the shooting did not indicate he was drunk either to Murr or Brase. Nor does the fact that Officer Brase held his fire provide any support for Appellant's argument that Murr's actions were unreasonable. Larsen turned and moved toward Murr, not Brase. And, in any event, Brase testified he too was moving into position to shoot.

It is undisputed Larsen occupied the high ground in the confrontation. In this position, the stairs and the retaining wall support the officers' objective perception of a threat as much as they support a perception of increased protection. Larsen could have easily used the retaining wall to his advantage. In a situation where other circumstances indicated an attack was imminent, nothing suggests a reasonable officer would hold his fire because the physical terrain between him and the threat could either hinder or help an attack. And Murr's actions were justified if any mistake in his judgment regarding the relative disadvantage of his position was reasonable.

*Movement.* Finally, Appellant argues the absence of hostile motions made it unreasonable for Murr to fire. It again points to *Walker*, where we held

> that where an officer had reason to believe that a suspect was only holding a knife, not a gun, and the suspect was not charging the officer and had made no slicing or stabbing motions toward him, that it was unreasonable for the officer to use deadly force against the suspect.

451 F.3d at 1160. But again the undisputed facts distinguish this case—Larsen did make hostile actions toward Murr. The undisputed facts here show that Larsen ignored at least four police commands to drop his weapon and then turned and stepped toward the officer with a large knife raised in a provocative motion. Under these circumstances, Murr reasonably concluded Larsen posed an immediate threat to his safety.

\* \* \*

-14-

For all these reasons, we agree with the district court that the use of deadly force in these circumstances was objectively reasonable. The undisputed evidence paints a picture that Officers Murr and Brase were faced with an armed suspect in an agitated condition, who ignored repeated warnings to drop his weapon, and appeared willing and able to attack. In response to these facts, Appellant offers only speculation and conjecture for the jury, arguing that Murr *might* have overreacted. That is insufficient to show a constitutional violation.

In these circumstances, the district court did not err in granting summary judgment based on qualified immunity.

### C. Claims Against City and County of Denver

Appellant makes two claims against Denver and its police chief. First, it alleges the City adopted an unconstitutional policy or practice on the use of deadly force. Second, it claims the City failed to adequately train and supervise police officers.

A § 1983 suit against a municipality for the actions of its police officers requires proof that (1) an officer committed a constitutional violation and (2) a municipal policy or custom was the moving force behind the constitutional deprivation that occurred. *Jiron*, 392 F.3d at 419. But without the predicate constitutional harm inflicted by an officer, no municipal liability exists. *Id.* (citing *City of Los Angeles v. Heller*, 475 U.S. 796 (1986)). Because no

constitutional violation exists here, the district court properly granted summary judgment on the claims against the City and County of Denver.

Appellant's final claim argues the chief of police failed to train or supervise Officer Murr appropriately. To make a prima facie claim for failure to train or supervise in an excessive force case, a plaintiff must demonstrate the officers in question "exceeded constitutional limitations on the use of force." *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003). Again, since no constitutional violation occurred in this case, Appellant cannot proceed on this claim.

### III. Conclusion

We AFFIRM the district court's summary judgment ruling in favor of the defendants on all claims.