FILED
**United States Court of Appeals
Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**January 18, 2022**

**Christopher M. Wolpert
Clerk of Court**

_____

FERNANDO CORONADO,

    Plaintiff - Appellant,

and

TABEHTHA CORONADO,

    Plaintiff,

v.

K. OLSEN, West Valley City Police
Officer; JACOB HILL, West Valley City
Police Officer; WEST VALLEY CITY, a
political subdivision,

    Defendants - Appellees.

No. 20-4118
(D.C. No. 2:18-CV-00083-CW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **LUCERO**, Senior Circuit Judge, and **MORITZ**, Circuit Judge.

_____

In response to a 911 call about suicidal threats and domestic violence, West Valley City's SWAT team arrived at Fernando Coronado's apartment building. After several hours of failed negotiations with Coronado—during which Coronado

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

continuously threatened his family and the police—the SWAT team cordoned the area around his fourth-floor apartment.  When Coronado eventually exited his apartment, he yelled at the officers and slapped his bare chest while ignoring the SWAT team's commands to stop, put his hands up, and get on the ground.  After Coronado noticed Officers Jacob Hill and Kenneth Olsen approaching him from behind, he took several steps towards them.  The officers told him to get on the ground.  Coronado failed to comply and the two officers fired their tasers, subduing him.

Coronado sued Officer Hill, Officer Olsen, and West Valley City under 42 U.S.C. § 1983, alleging the officers used excessive force when deploying their tasers. The district court granted summary judgment for the defendants.  Finding no constitutional violation by the officers, we **AFFIRM** the district court's grant of summary judgment.

## I.  Background

On August 3, 2016, Tabeththa Coronado called 911 to report that her husband, Fernando Coronado, was threatening to kill himself and their family.  She told the 911 dispatcher that Coronado had been drinking and that he had held a knife to his own throat while threatening to "kill everybody."  Supp. App. at 14.  Tabeththa also reported that there was a firearm in the apartment and that Coronado might have a pocketknife with him.

Pursuant to the 911 dispatcher's instructions, Tabeththa exited the apartment with her son and mother, who also lived in the apartment.  By that time, officers from

the West Valley City Police Department had arrived at the apartment. Tabeththa relayed to a police officer the same information she had told the 911 dispatcher. She also revealed that her husband had a history of making violent threats towards his family.

Shortly after arriving on scene, officers established contact with Coronado via his cell phone and tried to coax Coronado into leaving his apartment. When Coronado refused, the West Valley City SWAT team was dispatched to assist with the situation. A SWAT team negotiator began talking with Coronado on the phone to convince him to surrender peacefully.

Negotiations ensued for several hours. While speaking with the negotiator, Coronado repeatedly threatened to kill anyone who attempted to restrain him or enter the apartment. He also claimed he had rigged his apartment door to explode and would detonate the explosives if any officers entered his apartment. Coronado said he had a rifle and a knife with him and was willing to commit "suicide by cop." App., Vol. 3 at 179. During the negotiations, officers also gathered information on Coronado's criminal history. They discovered he had several prior convictions, including aggravated assault with a weapon.

Coronado's apartment building has two sets of exterior stairs, one on the north side and another on the south side. The SWAT team formulated a plan to lure Coronado to officers on the south-side stairs who would use a tactical shield for protection. Officers on the north-side stairs would wait on the floor below and then climb up the stairs and approach Coronado from behind. The goal was to prevent

Coronado from reentering his apartment and potentially reaching any weapons or explosives.

Coronado eventually agreed to leave his apartment. When Coronado opened his apartment door and walked out, the SWAT team observed that Coronado was barefoot and unclothed from the waist up, wearing only a pair of shorts and a belt. Coronado approached the members of the SWAT team on the south-side stairs and stood a few feet from them. The officers yelled numerous overlapping instructions at Coronado, including to put his "hands up" and "get on the ground." Officer Kenneth Olsen Body Camera Video 01 at 00:17–00:23 (filed conventionally).

SWAT team members Hill and Olsen then climbed the north-side stairs from the floor below. They noticed that Coronado did not appear to have a weapon, so they slung their rifles and pulled out their tasers. Coronado, who did not notice that Officers Hill and Olsen were approaching him from behind, advanced towards the officers on the south-side stairs, pounded his chest, and yelled, "I f**king created this!" *Id.* at 00:44–00:46. Coronado then turned around and saw Officers Hill and Olsen with their tasers pointed at him. Coronado took approximately three steps towards the officers and Officer Hill immediately ordered him to get on the ground. Either Officer Hill or Officer Olsen then fired his taser and the other officer deployed his taser immediately after. The tasers immobilized Coronado, who fell headfirst into a door and onto the ground. Officers handcuffed Coronado and arranged for medical treatment. In total, thirty-seven seconds had passed from the moment Coronado exited his apartment to the moment he was tasered.

4

Following his arrest, Coronado was charged with six misdemeanor crimes related to the incident, all of which were later dropped. Coronado and his wife filed a § 1983 claim against Officers Hill and Olsen for excessive force. Later, they amended their complaint to include a claim against West Valley City for unconstitutional policies, practices, procedures, customs, and training. All the defendants moved to dismiss the complaint. The district court dismissed several claims but did not dismiss the excessive force or municipal liability claims. After discovery, the defendants moved for summary judgment on the remaining claims. Coronado filed a cross-motion for summary judgment. The district court granted the defendants' motion for summary judgment and denied Coronado's motion, finding the officers' use of force was objectively reasonable.

## II.  Analysis

On appeal, Coronado argues the district court erred in granting summary judgment for the officers and West Valley City because a factual dispute exists as to whether the officers used reasonable force. We conclude the officers' use of force was reasonable and affirm the district court's grant of summary judgment.

### A.  Standard of Review

Under Federal Rule of Civil Procedure 56(a), a moving party can meet its burden of showing an absence of genuine dispute of material fact "either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal*

5

*Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  The burden then shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for

trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  No genuine issue

of material fact exists unless the evidence, construed in the light most favorable to

the nonmoving party, allows a verdict for the nonmoving party.  *Bones v. Honeywell

Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  We review de novo.

### B.  Qualified Immunity

Coronado argues the district court incorrectly concluded that the officers were

entitled to summary judgment on the excessive force claim.

Reviewing a grant of summary judgment in the qualified immunity context

involves a two-part inquiry.  *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d

1255, 1259 (10th Cir. 2008) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th

Cir. 2007)).  "First, the plaintiff must establish the defendant violated a constitutional

right."  *Id.*  If no constitutional violation occurred, our inquiry ends. *Id.*  If the

plaintiff shows that a constitutional right was violated, "we next ask if the

constitutional right was clearly established."  *Id.*  "To be clearly established, either

Supreme Court or Tenth Circuit precedent must be on point or the clearly established

weight of authority from other courts must agree with plaintiff's contention."  *Id.*

The Fourth Amendment prohibits police officers from deploying excessive

force in making arrests.  Excessive force claims are analyzed under the

"reasonableness" standard of the Fourth Amendment.  *Graham v. Connor*, 490 U.S.

386, 395 (1989).  Specifically, we focus on whether the officers employed

objectively reasonable force given the totality of the circumstances. *See Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009).

The Supreme Court identified the following factors a court should consider when evaluating a claim that police officers used excessive force: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The court must adopt "the perspective of a reasonable officer on the scene, rather than [assuming] the 20/20 vision of hindsight." *Id.* The *Graham* factors require an assessment that accounts "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Pauly v. White*, 874 F.3d 1197, 1215 (10th Cir. 2017) (quoting *Graham*, 490 U.S. at 397).

Ultimately, "the inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force." *Larsen*, 511 F.3d at 1260. If an officer "reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed." *Id.* (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004)). To assess the "degree of threat facing [the] officers," we look at several non-exclusive factors: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance

7

separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Id.*

Applying the *Graham* factors, we agree with the district court that no constitutional violation occurred as a matter of law.

*Severity of Crime.* This factor is easily met. At the time the officers were responding to the scene, they reasonably believed—based on Coronado's own statements—that Coronado had made a host of serious threats against persons and property. The fact that Coronado was eventually charged with misdemeanors is irrelevant. We examine the circumstances from the perspective of a reasonable officer "at the precise moment that they used force," not with hindsight of the crimes the suspect was eventually charged. *See Pauly*, 874 F.3d at 1219. At the time the officers used force, they were responding to a volatile situation that easily could have supported serious charges.

*Immediate Threat to Safety of Officers.* This factor too is easily met. The second *Graham* factor is "undoubtedly the 'most important' and fact intensive factor in determining the objective reasonableness of an officer's use of force." *Id.* at 1216 (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)). Use of deadly force is justified if there was "probable cause to believe that there was a threat of serious physical harm to [the officers] or to others." *Jiron*, 392 F.3d at 415 (internal quotation marks and citation omitted).

Coronado was given quick warnings by Officers Hill and Olsen and limited time to comply before he was tasered. But prior to those warnings, Coronado had

8

rebuffed repeated commands from SWAT team members on the south-side stairs to put his hands up and to get on the ground. Because Officers Hill and Olsen heard the other members of their team issue those commands and observed Coronado's noncompliance, it was reasonable for the officers to conclude that Coronado was refusing to comply with commands leading up to their use of force.

Although Coronado was unarmed and only wearing shorts, his actions prior to the officers' use of force could be reasonably interpreted as hostile. Since officers first arrived on scene, Coronado had threatened the police officers' lives and indicated his willingness to fight back if police entered his apartment and attempted to restrain him. Coronado also conveyed that he had weapons, his apartment was rigged with explosives, and he was prepared to suffer "suicide by cop." App., Vol. 3 at 179.

We are "particularly deferential to the split-second decisions police must make in situations involving deadly threats." *Estate of Valverde by & through Padilla v. Dodge*, 967 F.3d 1049, 1060 (10th Cir. 2020) (internal quotation marks and citation omitted). The fact that Coronado did not actually carry out any of his threats before the officers' use of force does not decrease the officers' assessment of danger during the confrontation. We do not look at whether Coronado actually intended to harm the officers or detonate his apartment, but rather whether a reasonable officer could have believed a threat of serious physical harm existed at the time. As the district court correctly found, reasonable officers would have believed that Coronado posed an immediate threat.

Given Coronado's inebriated state, he was unpredictable and had demonstrated a propensity for threatening and aggressive behavior. The officers were on the fourth floor of a building with stairs to their back and a railing to their side. Even an unarmed man who charged could do considerable damage. Moreover, the officers were armed with guns and tasers, and Coronado was within a few feet of them. Had he approached any closer, he would have been within reaching distance of their weapons.

Coronado argues that because officers could tell he was merely a confused, intoxicated person in a mental health crisis, it was unreasonable to interpret any of his actions as a threat. Although the officers could perceive that Coronado was confused and intoxicated during the encounter, a reasonable police officer would understand he still posed a substantial and immediate threat and the capacity to carry out his threats. The second *Graham* factor is therefore met.

*Resisting Arrest*. The third *Graham* factor requires us to assess whether Coronado was actively resisting arrest or attempting to evade arrest by flight when the officers used force. The district court concluded that Coronado's advance could reasonably be interpreted by the officers as an intention to resist officers' commands, and therefore the officers acted reasonably in believing Coronado was resisting arrest and the use of force was justified. We agree.

Coronado insists he was not resisting arrest because the officers could see he was unarmed and that he did not know he was under arrest. But even though Coronado did not appear to have a weapon, Coronado ignored repeated orders to

submit while swearing at the officers and beating his chest.  In these circumstances, officers can "do little more than what they did in this case: order the suspect to raise his hands and get to the ground."  *Valverde*, 967 F.3d at 1061.  Due to Coronado's repeated refusal to comply with their commands, Officers Hill and Olsen had a reasonable basis to believe Coronado was resisting arrest or lawful commands.

In summary, all three *Graham* factors support the officers' use of force to subdue Coronado.

Coronado also argues that even if Officers Hill and Olsen were entitled to use force, they still violated the Fourth Amendment because the officers recklessly created the need to use force.  He cites to an unpublished case in support.  Aplt. Br. at 40–42 (citing *Hastings v. Barnes,* 252 F. App'x 197 (10th Cir. 2007)).[1]

When assessing the totality of the circumstances, the use of force may be unreasonable "even in the face of an immediate, severe danger if the officer had recklessly created the danger."  *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1224–25 (10th Cir. 2019) (Bacharach, J., concurring) (citing *Allen v. Muskogee*, 119 F.3d 837, 839–41 (10th Cir. 1997)).

Here, the officers did not recklessly provoke Coronado.  In fact, the officers "spent hours attempting to resolve the situation through non-confrontational communication."  *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1320

---

[1] In *Hastings*, the court found an officer acts unreasonably "when he aggressively confronts an armed and suicidal/emotionally disturbed individual without gaining additional information."  *Hastings*, 252 F. App'x. at 206.

(10th Cir. 1998) (finding officers acted reasonably when they decided to enter an apartment forcibly after hours of fruitless negotiation with the suspect). When officers realized that Coronado would not willingly de-escalate the situation, the SWAT team lured Coronado from his apartment in an attempt to prevent him from accessing any explosives or weapons. Officers Hill and Olsen only used force when Coronado refused to comply with commands and began to approach them.

\* \* \*

In conclusion, all three *Graham* factors weigh in favor of finding that Officers Hill and Olsen reasonably concluded that Coronado posed a serious threat of harm to themselves and the other officers and did not use excessive force in using their tasers to subdue him.[2]

---

[2] Coronado argues the district court improperly applied the summary judgment standard by failing to construe several disputed facts in his favor when deciding whether the officers' use of force to subdue Coronado was reasonable. But Coronado fails to point to any evidence to show that the facts the district court relied on are disputed. He merely contends the police body cam video creates issues of disputed fact. We agree with the district court that the video supports the conclusion that an objective observer would perceive Coronado as a threat.

Coronado also argues the district court erred by considering events that occurred prior to the 37-second window he was outside his apartment. According to Coronado, the district court should have limited its review of the officers' conduct to only the short time period after Coronado exited his apartment. This argument also misses the mark. Our prior cases allow a court to examine an officer's conduct "prior to the suspect's threat of force" if the conduct is "immediately connected" to the use of force. *Romero v. Bd. of Cty. Comm'rs of Cty. of Lake*, 60 F.3d 702, 705 n.5 (10th Cir. 1995).

### C. Municipal Liability

We also agree with the district court that Coronado's claims against West Valley City fail. In his amended complaint, Coronado alleged the officers' use of excessive force resulted from West Valley City's policies, practices, and failure to adequately train or supervise the officers. Because we conclude that no constitutional violation occurred, Coronado's municipal liability claims necessarily fail.

The district court also granted summary judgment for West Valley City on the ground that Coronado's claims were unsubstantiated and therefore fail as a matter of law. Though Coronado did not contest this basis for summary judgment on appeal, our review of the record brings us to the same conclusion as the district court. Coronado failed to substantiate his claim that West Valley City ratified Officers Hill and Olsen's decisions or inadequately trained the officers.

## III. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's order granting summary judgment in favor of Officer Hill, Officer Olsen, and the West Valley City, and its denial of summary judgment for Coronado.

Entered for the Court

Timothy M. Tymkovich
Chief Judge

13