STATE OF LOUISIANA       *       NO. 2025-K-0673

VERSUS       *

      COURT OF APPEAL

TAVIONE GUSTAVE       *

      FOURTH CIRCUIT

      *

      STATE OF LOUISIANA

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 565-736, SECTION "I"
Honorable Leon T. Roche,
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Nakisha Ervin-Knott)


Liz Murrill
Louisiana Attorney General
J. Bryant Clark, Jr.
J. Taylor Gray
Assistant Attorneys General
Louisiana Department of Justice
Post Office Box 94005
Baton Rouge, Louisiana 70804

      **COUNSEL FOR STATE OF LOUISIANA/RELATOR**


Simone Lonas
Orleans Public Defenders
2601 Tulane Avenue, Suite 700
New Orleans, LA 70119

      **COUNSEL FOR DEFENDANT/RESPONDENT**


      **WRIT GRANTED; JUDGMENT REVERSED
AND REMANDED**

      **DECEMBER 19, 2025**

This writ involves the question of whether Louisiana State Police had reasonable suspicion to detain Tavione Gustave ("Defendant") after Lt. Troy Pichon observed what he recognized, based on his training and experience, as a concealed weapon in Defendant's front waistband while patrolling Bourbon Street during Mardi Gras weekend at approximately 1:00 a.m.[1] The district court granted Defendant's motion to suppress. After review of the testimony, the statutory framework, and the totality of the circumstances as they existed prior to the detention, we reverse.

Louisiana's statutory framework changed in 2024 with enactment of Louisiana Revised Statute 14:95(M), often referred to as constitutional carry. That statute allows adults who are not prohibited persons to carry concealed firearms without a permit. But constitutional carry is not absolute. The Legislature expressly retained the duties and restrictions governing the manner of carrying a concealed weapon, including those found in Louisiana Revised Statute 40:1379.3(I), (L), (M), (N), and (O). Those statutory provisions continue to regulate how a concealed

---

[1] Specifically, Defendant was arrested in the early morning of March 2, 2025, hours after the Endymion parade, and hours before the Bacchus parade.

firearm may be carried, and they authorize law enforcement intervention when the manner of carry presents safety concerns.

Negligent carrying remains a criminal offense under Louisiana Revised Statute 40:1382. That statute prohibits carrying a concealed weapon when, based on observable circumstances, it is foreseeable that the firearm may discharge, or when the manner of carrying creates reasonable apprehension in the mind of law enforcement or the public that a crime is being committed or about to be committed. The statute does not require brandishing, threats, or active manipulation of the firearm. In determining whether reasonable suspicion exists to justify an investigatory stop, an officer may assess foreseeable hazards arising from how the weapon appears to be carried based on the officer's training and experience. *See Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968) (noting that in determining whether reasonable suspicion exists, "due weight must be given . . . to the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience"); *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (noting that an officer may perceive patterns that the untrained person cannot). Courts have recognized that officer safety and safety of others, which would include prevention of accidental discharge, are legitimate governmental interests justifying limited investigative intrusions. *See Terry*, 392 U.S. at 27, 88 S.Ct. at 1883; *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977).

In the case *sub judice*, the pre-detention record establishes that Trooper Stahl and Lt. Pichon were patrolling Bourbon Street during Mardi Gras, a setting characterized by large crowds, close physical proximity, and frequent jostling

among pedestrians. While on proactive patrol, Lt. Pichon observed a "unique bulge" in Defendant's front waistband.

Trooper Stahl testified that Lt. Pichon recognized the bulge, based on his training and experience, as consistent with a concealed firearm. The record does not include testimony that the trooper noticed the absence of a belt or holster, or any other specific unsafe characteristic prior to the detention. But nothing in *Terry* requires visible manipulation of the firearm or direct observation of unsecured conditions when the perceived risk arises from the location, shape, and appearance of the object under the circumstances. Officers may assess danger based on "common sense conclusions about human behavior" informed by their training. *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695.

Although Defendant was standing still, the context matters. Bourbon Street at 1:00 a.m. during Mardi Gras presents a setting where physical contact between pedestrians is frequent and unpredictable. Officers patrolling such an environment are trained to recognize that firearms carried in the front waistband are often placed there without stabilizing support. An officer may reasonably infer that a firearm carried in that position could become dislodged if bumped. Louisiana's negligent-carrying statute specifically addresses foreseeable risks of accidental discharge arising from observable circumstances. The Legislature did not limit its application to situations in which the weapon is already slipping or exposed. It encompasses situations where the manner of carry, combined with surrounding circumstances, creates foreseeable hazard.

The district court concluded that the officer lacked reasonable suspicion because Defendant was merely standing on the sidewalk and because concealed carry is lawful. That analysis isolates the bulge from the accompanying

circumstances and overlooks the combined significance of (1) the distinctive shape consistent with a firearm in the front waistband, (2) the officer's training-supported recognition of that placement, and (3) the high-risk environment of Bourbon Street during Mardi Gras. Louisiana Revised Statute 14:95(M) permits concealed carry, but it does not insulate all manners of carrying from reasonable inquiry. *See Navarette v. California*, 572 U.S. 393, 402, 134 S.Ct. 1683, 1690, 188 L.Ed.2d 680 (2014) (holding that reasonable suspicion is evaluated under a nontechnical, "commonsense" analysis). When a weapon appears to be carried in a manner that presents a foreseeable risk under the conditions present, officers may investigate whether that manner of carry violates Louisiana Revised Statute 40:1382.

The Fourth Amendment does not require officers to rule out all lawful explanations before initiating a brief stop. It requires only a "particularized and objective basis" for suspecting criminal activity, in this case, negligent carrying. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (quoting *Cortez*, 449 U.S. at 417-18, 101 S.Ct. at 695). Reasonable suspicion may be based on the officer's ability to draw inferences that would not be apparent to the untrained eye. *Id.*, 534 U.S. at 273, 122 S.Ct. at 750-51 (citing *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695). The record establishes that standard.

The setting is very relevant. It was approximately 1:00 a.m. during Mardi Gras on Bourbon Street. While the Legislature chose not to make the French Quarter a gun-free zone, it likewise did not limit law enforcement's authority to address unsafe and negligent manner of carry that threatens public safety. Courts have long recognized that context matters in assessing reasonable suspicion. *See Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (context and location are proper factors in *Terry* analysis). The foreseeable

4

risk of a firearm falling or discharging is heightened in such conditions. Officers are not required to wait for the firearm to fall, for someone to bump into the defendant, for someone to reach for the firearm, or for an injury to occur before taking investigative action. *See Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) ("A reasonable officer need not await the 'glint of steel' before taking self-protective action; by then, it is often ... too late to take safety precautions.") (internal quotation marks and citation omitted).

We further reject Defendant's argument that his lack of opportunity to notify officers negates the statutory duty imposed by Louisiana Revised Statute 40:1379.3(I)(2). That provision requires an armed individual approached by law enforcement in an official capacity to notify the officer and submit to a temporary disarmament for safety purposes.

Louisiana Revised Statute 40:1379.3(I)(2) provides, in pertinent part, as follows:

> A permittee armed with a handgun in accordance with this Section or a person carrying a weapon pursuant to R.S. 14:95(M) shall notify any police officer who approaches the individual in an official manner or with an identified official purpose that the individual has a weapon on his person, submit to a pat down, and allow the officer to temporarily disarm him.

Constitutional carry did not eliminate this statutory obligation. While the factual dispute regarding Defendant's opportunity to notify is not dispositive of reasonable suspicion, the statute reinforces that the Legislature expects cooperation from armed individuals and anticipates officer interaction when a firearm is carried in public. Defendant had an obligation to state that he was carrying a firearm and allow the trooper to temporarily disarm him. The record does not show that Defendant attempted to comply with this obligation.

*United States v. Wilson*, 143 F.4th 647 (5th Cir. 2025), relied upon by the district court, does not control the outcome in the case *sub judice* and is materially distinguishable. *Wilson* held that in a constitutional-carry regime, the mere fact that a person is carrying a concealed firearm without more does not supply reasonable suspicion for a *Terry* stop. *Id.* at 657. The district court applied *Wilson* as if any observation of a concealed firearm necessarily constitutes "mere possession." But the record before us reflects additional, articulable circumstances beyond possession. These circumstances allowed the trooper to draw a reasonable inference regarding the manner in which the firearm appeared to be carried and the risks associated with that manner of carry. Nothing in *Wilson* prohibits officers from distinguishing between lawful concealed possession and circumstances suggesting potentially negligent carry under Louisiana Revised Statute 40:1382. Accordingly, *Wilson* does not undermine the reasonable suspicion determination here.

For these reasons, the trooper had reasonable suspicion that Defendant was committing the offense of negligent carrying of a concealed firearm. The subsequent seizure of the firearm and the search incident to arrest were valid. The district court erred in granting the motion to suppress. The writ is granted, the judgment of the district court is reversed, and the case is remanded for further proceedings.

**WRIT GRANTED; JUDGMENT REVERSED**
**AND REMANDED**