FILED
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**January 14, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

—————————————————————

JACOB ROOT,

    Plaintiff - Appellant,

v.

OFFICER ROBERT COMSTOCK, in his
individual capacity; CITY OF
COLORADO SPRINGS, a municipality,

    Defendants - Appellees.

No. 25-1123
(D.C. No. 1:24-CV-01293-DDD-TPO)
(D. Colo.)

—————————————————————

### ORDER AND JUDGMENT[*]

—————————————————————

Before **MATHESON**, **EID**, and **CARSON**, Circuit Judges.

—————————————————————

    Jacob Root appeals the district court's dismissal of his 42 U.S.C. § 1983 excessive force complaint against Colorado Springs Police Department ("CSPD") Officer Robert Comstock and the City of Colorado Springs. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

### A.    *Factual Allegations*

"Because this case is on appeal from a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), we accept all well-pleaded factual allegations in the complaint as true.  We present the facts as articulated in the complaint." *Thomas v. Kaven*, 765 F.3d 1183, 1188 n.1 (10th Cir. 2014) (citation omitted).  The operative complaint is Mr. Root's second amended complaint ("the complaint").

### 1.  The Incident

On May 16, 2022, Officer Comstock and a law enforcement task force were investigating the theft of a 2017 Ford Fusion.  CSPD officers located the stolen car at a Super 8 Motel.  Rather than seize the vehicle, officers attached a tracking device to it.  Mr. Root later entered the car and drove away from the motel.

The officers tracked the Ford Fusion to the Aspen Lodge Hotel, where they found it unoccupied.  When Mr. Root got back into the car, officers attempted to use their squad cars to block him from leaving the parking lot.  Mr. Root maneuvered around the squad cars, hit the front bumper of one of them, and fled.

The officers tracked the Ford Fusion to a Kum & Go gas station at 2588 Airport Road, Colorado Springs.  They watched Mr. Root exit the car and enter the gas station convenience store.  While Mr. Root was inside, they surrounded the building.

Mr. Root emerged from the store carrying a half gallon of milk.  Upon spotting the officers, he ran "past the gas pumps and toward the sidewalk on Airport Road." App., Vol. I at 10.  Officer Comstock gave chase.

2

"As Mr. Root was running, Colorado State Patrol Detective Wolff shot at Mr. Root with a 'Bola Wrap,'"[1] which missed, and Mr. Root continued to flee. *Id.* He ran "down the elevated slope dividing the gas station from the sidewalk on Airport Road." *Id.* The slope was "covered in dirt and uneven rocks." *Id.*

As he pursued Mr. Root, Officer Comstock drew his taser and, without warning, tasered him in the back. Mr. Root "experienced muscular incapacitation," preventing him from using his hand or arms to break his fall. *Id.* at 10-11. He "fell head-first down the decline" and broke his neck. *Id.* at 11.

When Officer Comstock tased him, Mr. Root was unarmed and had not threatened or attempted to use force against officers or the public.

## 2. CSPD's Use of Force Policy and Response to the Incident

The complaint claimed that Officer Comstock violated CSPD's use of force and taser policies. It alleged that CSPD's use of force policy states, "*Prior to using force, an officer shall . . . give a clear verbal warning of their intent to use force*." *Id.* at 6. It further alleged that Officer Comstock violated CSPD "policy by shooting his TASER weapon without warning and while Mr. Root was on an elevated, uneven surface where a fall was likely to cause substantial injury or death." *See id.* at 26.[2]

---

[1] The district court explained that "[a] Bola Wrap is a hand-held remote restraint device that deploys a Kevlar cord to wrap around an individual's legs or arms to prevent them from moving." App., Vol 1 at 60 n.1.

[2] Although Mr. Root did not attach CSPD's use of force or taser policy to the complaint, the complaint refers to them sufficiently for consideration on the motion to dismiss. *See* App., Vol. I at 6, 26; *Luethje v. Kyle*, 131 F.4th 1179, 1188 (10th Cir. 2025) ("[A] district court may 'consider documents . . . referenced in the complaint' only if

The complaint alleged that although Officer Comstock violated department policy, CSPD did not terminate or discipline him.  Instead, CSPD's "official position" regarding the incident "was and is that [Officer] Comstock's actions were appropriate, consistent with, and engaged in pursuant to all approved police policies, practices[,] and training of the City of Colorado Springs and . . . CSPD."  *Id.* at 12.

## B. *Procedural History*

### 1. Claims

Mr. Root sued Officer Comstock in his individual capacity under 42 U.S.C. § 1983 and Colo. Rev. Stat. § 13-21-131.  He claimed Officer Comstock's tasing him without warning and "while [he] was on elevated, uneven surface" constituted excessive force in violation of the Fourth Amendment and the Colorado Constitution.  *Id.* at 23; *see also id* at 21-27.  He alleged that, "at the time of complained events, [he] had a clearly established constitutional right under the Fourth Amendment . . . to be secure in his person from unreasonable seizure through excessive force," and "to bodily integrity and to be free from excessive force by law enforcement."  *Id.* at 22.

Mr. Root also sued Colorado Springs under § 1983, asserting municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  He alleged that CSPD has an unofficial custom of encouraging and condoning the use of excessive force, which was the "moving force and proximate cause of [Officer Comstock's] violation of

---

'they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017))).

Mr. Root's constitutional rights." *Id.* at 19.  The complaint asserted that nine previous instances of CSPD officers using excessive force without discipline established this unofficial custom and evidenced CSPD's deliberate indifference.[3]

## 2.  Motion to Dismiss

Officer Comstock and Colorado Springs moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Officer Comstock argued that he was entitled to qualified immunity under § 1983. He argued that his actions under *Graham v. Connor*, 490 U.S. 386 (1989), "were reasonable under the rapidly evolving circumstances," App., Vol. I at 34.  He further said Mr. Root could not show that any Fourth Amendment violation was based on clearly established law.

Colorado Springs argued that Mr. Root's complaint failed to state a *Monell* claim. It said his allegations were too conclusory to show a policy or custom, and that Mr. Root failed to allege facts showing any policy or custom caused the alleged violation.

The district court granted the motion.  It first found that Officer Comstock was entitled to qualified immunity.  The court rejected Mr. Root's argument that the complaint adequately alleged a claim for deadly force against Officer Comstock.  And based on the facts alleged, it found that Officer Comstock acted reasonably under

---

[3] In his complaint, Mr. Root also advanced ratification and failure-to-train theories in support of his *Monell* claim.  App., Vol. I at 19-20, 28-29.  He does not argue these theories on appeal.

*Graham*. Further, the court determined that even if Officer Comstock violated the Fourth Amendment, Mr. Root could not show the violation was based on clearly established law.

Second, the court concluded the complaint failed to state a *Monell* claim under a ratification, custom or practice, or failure to train theory.

Having disposed of Mr. Root's federal claims, the court declined to exercise supplemental jurisdiction over his state law claim.[4] It therefore dismissed the complaint and entered judgment for Officer Comstock and Colorado Springs. Mr. Root appealed.

## II. DISCUSSION

Mr. Root contends on appeal that the district court erred in dismissing (1) his § 1983 excessive force claim against Officer Comstock and (2) his § 1983 *Monell* claim against Colorado Springs. We affirm the district court.

### A. *Standard of Review and Rule 12(b)(6) Motions to Dismiss*

"We review a dismissal under Federal Rule of Civil Procedure 12(b)(6) based on qualified immunity de novo." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021). We also review dismissal of a *Monell* claim de novo. *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 n.7 (10th Cir. 2023).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[4] On appeal, Mr. Root does not challenge the dismissal of his state law claim.

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotations omitted).

We accept all well-pled allegations in the complaint as true and view them in the light most favorable to the non-moving party. *Luethje v. Kyle*, 131 F.4th 1179, 1187 (10th Cir. 2025). But "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). "Accordingly, in examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012); *see also Waller v. City & Cnty. of Denv.*, 932 F.3d 1277, 1282 (10th Cir. 2019).

## B. *Officer Comstock*

On his excessive force claim against Officer Comstock, Mr. Root argues his complaint sufficiently alleged deadly force to overcome qualified immunity. In his reply brief, he challenges the district court's *Graham* factors analysis, suggesting that even if his complaint did not adequately allege deadly force, it sufficiently alleged non-deadly excessive force to overcome qualified immunity.[5]

---

[5] Mr. Root failed to address the *Graham* factors in his opening brief, potentially waiving his argument that Officer Comstock's use of force was unreasonable under *Graham*. *See Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019) ("Issues not raised in the opening brief are deemed abandoned or waived." (quotations omitted)). But because Officer Comstock's response brief addresses the *Graham* factors and does not argue waiver, he has waived Mr. Root's waiver. *See United States v. Rodebaugh*, 798 F.3d 1281, 1306 (10th Cir. 2015) (stating it was "textbook waiver or forfeiture of the waiver" where the government both failed to argue waiver in its responsive brief and

As explained below, Mr. Root has not alleged a deadly or a non-deadly excessive force violation under clearly established law.

We start with an overview of excessive force and qualified immunity law.

## 1. Legal Background

### a. *Excessive force*

To establish an excessive force Fourth Amendment constitutional violation, "the plaintiff must demonstrate the force used was objectively unreasonable." *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 759 (10th Cir. 2021) (quotations omitted).[6] "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quotations omitted).

Courts generally evaluate reasonableness under the totality of the circumstances based on the *Graham* factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "[T]he situation at the precise time [force is deployed] will often be what matters most; . . . [b]ut earlier facts and circumstances may bear on how a reasonable officer

---

addressed the argument on the merits). In such circumstances, we may hold the issue waived or address it on the merits. *Id.* at 1313-17.

[6] The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 650, 655 (1961).

would have understood and responded to later ones." *Barnes v. Felix*, 605 U.S. 73, 80 (2025).

Force may be deadly or non-deadly. "Deadly force is such force that 'create[s] a substantial risk of causing death or serious bodily harm.'" *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009) (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 415 n.2 (10th Cir. 2004)). It "encompasses a range of applications of force, some more certain to cause death than others." *Cordova v. Aragon*, 569 F.3d 1183, 1189 (10th Cir. 2009). "[D]eadly force is justified only if a reasonable officer in the officer's position would have had probable cause to believe that there was a threat of serious physical harm to himself or others." *Teetz ex rel. Lofton v. Stepien*, 142 F.4th 705, 725 (10th Cir. 2025) (quotations omitted).

   b. *Qualified immunity*

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotations omitted).

A defendant asserting qualified immunity at the motion to dismiss stage faces a higher bar than those asserting the defense at the summary judgment stage. *Luethje*, 131 F.4th at 1187. "This is because the court analyzes only the defendant's conduct *as alleged in the complaint . . . .*" *Id.* (quotations omitted). Even so, qualified immunity is an "exacting" standard, *id.* (quoting *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611

(2015)), and "protects all but the plainly incompetent or those who knowingly violate the law," *id.* (quoting *Mullenix*, 577 U.S. at 12).

"A motion to dismiss based on qualified immunity imposes the burden on the plaintiff to show both that [1] a constitutional violation occurred and [2] that the constitutional right was clearly established at the time of the alleged violation." *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) (quotations omitted). "A court evaluating qualified immunity is free to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first . . . ." *Id.* (quotations omitted). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (quotations omitted). "The law is clearly established when a Supreme Court or Tenth Circuit precedent is on point or the alleged right is clearly established from case law in other circuits." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017). The relevant "precedent is considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Id.* (quotations omitted).

The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). A prior decision must sufficiently address the prohibited conduct so "that it is 'clear to a

reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).

In the Fourth Amendment excessive force context, it can be "difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12 (quotations omitted). Excessive force therefore "is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Mullenix*, 577 U.S. at 13).

### 2. Analysis

#### a. *Deadly force*

We doubt the complaint satisfied Mr. Root's burden at prong one of the qualified immunity test to allege a deadly force constitutional violation, but even assuming it did, he has not shown a violation of clearly established law.

The complaint alleged that Mr. Root was on an "elevated slope" when tased, App., Vol. I at 10. Absent are factual allegations about the slope's height or pitch, or other information to determine whether tasing posed a substantial risk of death or serious bodily harm.[7] Mr. Root fails to cite a factually analogous Supreme Court or Tenth

---

[7] As the district court put it, "Mr. Root provides no details describing the elevated position he allegedly was in—nothing regarding the height he was at vis-à-vis the ground (or that he was even off the ground), or the degree of decline he was running down." App., Vol. 1 at 65 n.2.

Circuit case, and his out-of-circuit cases are distinguishable.[8]  For example, in *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021), the decedent was in a "precarious position" on top of an eight-foot wall when tased.  *Id.* at 1240.  In *Peroza-Benitez v. Smith*, 994 F.3d 157 (3d Cir. 2021), police officers punched the plaintiff repeatedly in the head while he hung from a second story window.  *Id.* at 167.  In *Harper v. Perkins*, 459 F. App'x. 822 (11th Cir. 2012) (unpublished), the plaintiff was at least four feet off the ground in a tree when officers tased him.  *Id.* at 827.  And in *Baker v. Union Township.*, 587 F. App'x. 229 (6th Cir. 2014) (unpublished), the plaintiff was standing at the top of an "observable staircase" when tased.  *Id.* at 234.[9]

---

[8] The district court described the cases Mr. Root cited as "remarkably dissimilar to the facts he alleges, *viz.*, he was not on a wall, ledge, ladder, roof, or fence off the ground."  App., Vol. 1 at 65 n.2.

[9] The district court cases Mr. Root cites further stand in contrast to the facts alleged in his complaint.  *See Martin v. City of Reading*, 118 F. Supp. 3d 751, 756 (E.D. Pa. 2015) (police officers tased a suspect while he was standing on a highway overpass); *see also Negron v. City of New York*, 976 F. Supp. 2d 360, 368, 371 (E.D.N.Y. 2013) (officers tased a suspect standing on a ledge 10 feet off the ground); *Rockwell v. Rawlins*, No. 13-cv-3049, 2014 WL 5426716, at *4 (D. Md. Oct. 23, 2014) (officers tased a suspect who was standing on the ledge of a second story roof); *Peabody v. Perry Twp.*, No. 2:10–cv–1078, 2013 WL 1327026, at *1 (S.D. Ohio Mar. 29, 2013) (officers tased a suspect at the top of an eight foot fence); *Snauer v. City of Springfield*, No. 09-CV-6277-TC, 2010 WL 4875784, at *2 (D. Or. Oct. 1, 2010) (officers tased a suspect at the top of a six or seven foot fence); *Cook v. Riley*, No. 1:11CV24, 2012 WL 2239743, at *1 (M.D. N.C. June 15, 2012) (officers tased a suspect while he was in a tree stand 15 feet off the ground).

12

Because Mr. Root's deadly force claim fails at prong two of qualified immunity,[10] we turn to whether Mr. Root plausibly alleged a non-deadly excessive force claim under the *Graham* factors that can overcome qualified immunity.

b.   *Non-deadly force*

Mr. Root does not contest the district court's determination that, because officers suspected him of felony crimes (auto theft and evading arrest)[11] and because he was fleeing from the police when he was tased, the first and third *Graham* factors weighed in Officer Comstock's favor.  *See* Aplt. Reply Br. at 5 ("Admittedly, the first and third factors under *Graham* favor Appellee Comstock.").

Mr. Root does contest the district court's finding that the second *Graham* factor—whether Mr. Root presented an immediate threat to the safety of the officers or others—favors Officer Comstock.  He alleged in his complaint and argues on appeal that he was unarmed, posed no threat, and received no warning.  *See* App., Vol. I at 11; *see also* Aplt. Reply Br. at 6.

We need not resolve this issue.  Even if we assume the complaint alleged an excessive force violation under *Graham*, Mr. Root has not shown a constitutional violation under clearly established law.

---

[10] This conclusion finds further support from the prong-two analysis presented below.

[11] In *Vette v. Sanders*, 989 F.3d 1154 (10th Cir. 2021), we said "our binding precedent indicates the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent." *Id.* at 1170 (collecting cases).

First, he has not cited a Supreme Court or Tenth Circuit case finding an excessive force violation under circumstances that are materially similar to the facts alleged in his complaint. His reliance on *Tennessee v. Garner*, 471 U.S. 1 (1985), and *Estate of Larsen v. Murr*, 511 F.3d 1255 (10th Cir. 2008), is misplaced. In contrast to this taser case, both involved deadly force using a gun.[12] In *Garner*, police fatally shot a fleeing felony suspect. 471 U.S. at 3-4. In *Larsen*, police shot the suspect, and we found no Fourth Amendment violation. 511 F.3d at 1258; *see Heard v. Dulayev*, 29 F.4th 1195, 1203 (10th Cir. 2022) ("[T]he plaintiff must 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" (quoting *Wesby*, 583, U.S. at 64)).

Second, Mr. Root's out-of-circuit cases do not provide clearly established law. Most of them are district court and unpublished decisions that cannot qualify as clearly established law. *See Surat v. Klamser*, 52 F.4th 1261, 1279 (10th Cir. 2022) ("[W]e have repeatedly explained that clearly established law may not be based on our unpublished

---

[12] Mr. Root does not discuss Tenth Circuit taser cases, but even if he had, they do not clearly establish the law applicable to this case. Our taser cases finding excessive force under *Graham* involved (1) an assault suspect who was effectively subdued when tased, *Krueger v. Phillips*, 154 F.4th 1164, 1175 (10th Cir. 2025); (2) a misdemeanor offender who was not resisting arrest when tased after being tackled to the ground, *Emmett v. Armstrong*, 973 F.3d 1127, 1138 (10th Cir. 2020); (3) a misdemeanor offender tased multiple times, *Perea v. Baca,* 817 F.3d 1198, 1200 (10th Cir. 2016); and (4) an individual who was tased, but was not suspected of a crime, not a threat, and not fleeing, *Cavanaugh v. Woods Cross City*, 625 F.3d 66 (10th Cir. 2010).

By contrast, Mr. Root was a fleeing felony suspect. He had crashed into a squad car, evaded a Bola Wrap attempt to stop him, and was not subdued. *Krueger* also does not help Mr. Root on clearly established law because we decided it in 2025, after the 2022 incident here.

decisions."); *Ullery v. Bradley*, 949 F.3d 1282, 1300 (10th Cir. 2020) ("[W]e decline to consider district court opinions in evaluating the legal landscape for purposes of qualified immunity.").[13]

Mr. Root cites two published out-of-circuit cases—*Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021), and *Peroza-Benitez v. Smith*, 994 F.3d 157 (3d Cir. 2021). But, as explained above, his complaint did not plead facts analogous to the circumstances in those cases, and even if it did, they are not enough on their own to clearly establish the applicable law for this case. *See Ullery*, 949 F.3d at 1294-98 (law was clearly established based on the consensus of persuasive authority from six other circuits); *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 595 (10th Cir. 1999) (same).

Mr. Root finally asserts that the excessive force was obvious. But this exception to the need for factually analogous case law is reserved for "rare" and "extreme" cases. *Frasier v. Evans*, 992 F.3d 1003, 1015, 1021 (10th Cir. 2021). In light of his evasive and dangerous conduct (hitting the squad car) leading up to the chase, *see Barnes*, 605 U.S. at 80 ("earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones"); his escape from the Bola Wrap; and at least the two *Graham* factors in his disfavor, Mr. Root's obviousness argument fails.[14]

---

[13] As explained in footnote 9, *supra*, Mr. Root's district court cases are factually dissimilar to this case.

[14] Even if all three *Graham* factors supported Mr. Root, cases finding clearly established law based on the *Graham* factors alone are rare. *See Surat*, 52 F.4th at 1279 (holding plaintiff's case was "not one of the rare obvious case[s] where reliance on *Graham* alone is sufficient" (quotations omitted)).

\*     \*     \*     \*

In sum, Mr. Root has failed to meet his burden on prong two of qualified immunity on both his deadly and non-deadly excessive force claims. We affirm dismissal of his § 1983 complaint against Officer Comstock.

### C. *Colorado Springs Claim*

The district court held that Mr. Root's complaint did not plausibly state a *Monell* claim against Colorado Springs. We affirm.

### 1. Legal Background

"Under *Monell*, a municipality is a 'person' subject to § 1983 liability." *See Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019) (quotations omitted). "*Monell* allows plaintiffs to sue local governing bodies (or their functional equivalents) directly under § 1983 for constitutional violations pursuant to a body's policy, practice, or custom." *Est. of Burgaz v. Bd. of Cnty. Comm'rs for Jefferson Cnty. Colo.*, 30 F.4th 1181, 1189 (10th Cir. 2022).

In addition to establishing an underlying constitutional violation, a *Monell* plaintiff must show "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas*, 58 F.4th at 1145.

An official policy or custom may include:

(1) a formal regulation or policy statement;
(2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;
(3) the decisions of employees with final policymaking authority;

16

(4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or

(5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id.* (quotations omitted).

We addressed proof of an informal custom in *Carney v. City and County of Denver*, 534 F.3d 1269 (10th Cir. 2008): "In attempting to prove the existence of such a continuing, persistent and widespread custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way. Indeed, a plaintiff's failure to allege the existence of similar discrimination as to others seriously undermines her claim that the City maintained a custom of discriminatory personnel practices." *Id.* at 1274 (quotations omitted).

For causation, "a plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Waller*, 932 F.3d at 1284 (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). The policy or custom must be "the moving force behind the injury alleged." *Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 770 (10th Cir. 2013) (quotations omitted).

For deliberate indifference, a plaintiff must show "the municipality had actual or constructive notice that its action or failure to act were substantially certain to result in a constitutional violation and consciously or deliberately chooses to disregard the risk of harm." *Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 934 (10th Cir. 2025) (quoting *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022)).

17

2. **Analysis**

The district court found that Mr. Root failed to state a *Monell* claim under a ratification, custom, or failure-to-train theory.  On appeal, Mr. Root does not challenge the court's ratification or failure-to-train determinations, so we address only his custom-and-widespread-practice theory.

Mr. Root briefly argues that Officer Comstock followed a CSPD custom established by the 9 times over 13 years that CSPD officers allegedly used force without receiving discipline.  Aplt. Br. at 27-29.  He alleges "the affected individuals sustained serious injuries, and the City of Colorado Springs awarded monetary settlements to each of them, despite concluding that the officer's actions were in line with departmental policies. . ."  *Id.* at 28-29.  These allegations, he says, "paint[] a troubling picture of a pattern within the City of Colorado Springs that tends to excuse officer misconduct."  *Id.* at 29.

Mr. Root's complaint falls short of stating a *Monell* claim based on a custom and widespread practice.  It fails to allege that the force previously employed was excessive or unreasonable under the circumstances.  *See Finch*, 38 F.4th at 1245 (finding the plaintiff failed to establish an unofficial custom of using excessive force against unthreatening civilians where the plaintiff did "not argue that all of the more than 20 shootings he cites constituted excessive force").  In fact, Mr. Root admits that CSPD found the officers' use of force was appropriate in many of the listed instances.

The prior instances thus do not show a custom of condoning and encouraging excessive force.  The complaint therefore fails to plausibly allege that CSPD has a

18

practice of condoning and encouraging the use of excessive force that was so "widespread," "permanent and well settled" as to have "the force of law." *Waller*, 932 F.3d at 1283 (quotations omitted).

Mr. Root's complaint otherwise failed to present non-conclusory allegations that a CSPD custom was the "moving force" behind Officer Comstock's actions or that CSPD was deliberately indifferent. *See Khalik*, 671 F.3d at 1191 ("[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." (quoting *Twombly*, 550 U.S. at 555)).

For these reasons, we affirm the district court's dismissal of Mr. Root's *Monell* claim against Colorado Springs.

## III.  CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge